Joseph **CIANCIOLO** t/a Galaxy Massage Parlor et al.

v.

**MEMBERS OF** the **CITY COUNCIL, CITY OF KNOXVILLE, TENNES- SEE,** et al.

**EXECUTIVE SERVICES, INC.,** d/b/a Executive Massage Salon, Inc., et al.

v.

Kyle C. **TESTERMAN** et al.

**Civ. A. Nos. 8485, 8490.**

United States District Court, E. D. Tennessee, N. D.

Jan. 16, 1974.

Joseph S. Bambacus, Heberle & Bambacus, Richmond, Va., Kenneth C. Hogge, Hampton, Va., Wade M. Boswell,

Charles D. Susano, Jr., Bernstein, Dougherty & Susano, Knoxville, Tenn., for plaintiffs.

Robert A. Finley, Knoxville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This proceeding is a consolidation of cases numbers 8490 and 8485 in which plaintiffs, owners and two former employees of Knoxville "massage parlors," seek to enjoin the enforcement and declare invalid Knoxville Ordinance No. 5645, which, *inter alia*, prohibits bisexual massages within the City Limits of Knoxville, Tennessee. Jurisdiction of this Court is based upon 42 U.S.C. § 1983; 42 U.S.C. § 2000e et seq.; and the Fourteenth Amendment to the United States Constitution.

On November 6, 1973, the City Council of Knoxville, in responding to the requests of various segments of the community, enacted Ordinance No. 5645, which was to become effective 17 days after its passage (November 24, 1973).[1] Plaintiffs, faced with the prospect of prosecution under the ordinance, terminated their business and the employment of female masseusses in Knoxville. Plaintiffs claim they will suffer serious economic loss as a result of their shut down.

At a hearing on plaintiffs' motion for a preliminary injunction, testimony was received from an owner-operator of a

---

1. The applicable provisions of the ordinance under examination in this proceeding are, in part:

"SECTION 2: BE IT FURTHER ORDAINED, that it is unlawful for any masseur acting as a professional massagist or otherwise engaging in the art or practice of massage for commercial purposes in this city, to practice massage for clients or customers of the female sex.

"SECTION 3: BE IT FURTHER ORDAINED, that it is unlawful for any masseuse acting as a professional massagist or otherwise engaging in the art or practice of massage for commercial purposes in this City, to practice massage for clients or customers of the male sex.

"SECTION 4: BE IT FURTHER ORDAINED, that noting [sic] in this Ordinance shall be construed to apply to any professional practitioner, licensed, registered or certified by the State of Tennessee, or to health personnel or assistants working under their supervision, responsibility and control, or to prohibit or limit such professional practitioner or health personnel from performing or practicing that for which he has been duly licensed, registered or certified.

"SECTION 5: BE IT FURTHER ORDAINED, that any person who is found to be in violation of any provision of this ordinance shall be fined not less than fifty dollars ($50.00) nor more than one hundred dollars ($100.00), exclusive of court costs.

massage parlor and two police officers who had been assigned on two separate occasions to visit two local parlors as undercover agents. The evidence heard conclusively established that the operations in question were sexually-orientated. Without any formal training or license, the masseuses charged $15.00 for a 15–20 minute massage, which terminated in both instances in sexually indiscriminate conduct. The inclusive nature of these "massages" offends the sensibilities of this community. Ostensibly serving as a legitimate massage parlor, the evidence received indicates they served merely as a subterfuge for various sexual activities, and, if we have interpreted the evidence correctly, the State in this instance would have an appropriate remedy in the State's Chancery Court on the theory that such operations constitute a public nuisance.

■■ It is settled law that the regulation of massage parlors is within the legitimate exercise of the state's police powers. *See generally,* 17 A.L.R.2d 1183 (1951). Like any regulation promulgated under the police power of the state, however, the regulation must be reasonably necessary and the means adopted must be appropriate for accomplishing the state's objective. *See generally,* Clason v. Indiana, 306 U.S. 439, 83 L.Ed. 858, 59 S.Ct. 609 (1939); Buchanan v. Warley, 245 U.S. 60, 62 L.Ed. 149, 38 S. Ct. 16 (1917). Additionally, it is generally recognized that there must be a real relationship between the actual provisions of a regulation and its ostensible purpose. California Reduction Co. v. Sanitary Reduction Works, 199 U.S. 306, 50 L.Ed. 204, 26 S.Ct. 100 (1905). Defendants contend that the prohibitions in Ordinance No. 5645 fall within the

permissible scope of the City's police power.[2]

While we respect the state case law holding such ordinances valid as a reasonable exercise of police power, we must examine Ordinance No. 5645 in light of the Civil Rights Act of 1964 and applicable sections of the United States Constitution.

### The Civil Rights Act of 1964

Title 7 of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–2(a)(1)–(2) provides in full:

"(a) It shall be an unlawful employment practice for an employer—

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

"(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such an individual's race, color, religion, sex, or national origin."

Section 2000e–7 entitled "Effect on State laws," provides in part:

"Nothing in this title . . . shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an

---

2.  Kisley v. Falls Church, 212 Va. 693, 187 S.E.2d 168, appeal dismissed, 409 U.S. 907, 93 S.Ct. 237, 34 L.Ed.2d 169; Gregg v. State, 376 S.W.2d 763 (Texas Crim.App. 1964); Connell v. State, 371 S.W.2d 45 (Texas Crim.App.1963); Houston v. Shober, 362 S.W.2d 886 (Texas Civ.App.1962); Patterson v. Dallas, 355 S.W.2d 838 (Texas Civ.App.1962), appeal dismissed, 372 U.S. 251, 83 S.Ct. 873, 9 L.Ed.2d 732; Ex parte Maki, 56 Cal.App.2d 635, 133 P.2d 64 (1943). But see contra, J.S.K. Enterprises, Inc. v. Lacey, 6 Wash.App. 43, 492 P.2d 600 (1971) (holding invalid bisexual ordinance amendment invalid as unreasonably sweeping); Cheek v. Charlotte, 273 N.C. 293, 160 S.E.2d 18 (1968) (unconstitutional class legislation); 51 A.L.R.2d 937 (1973).

unlawful employment practice under this title."

■ Plaintiffs contend, pursuant to the statutory directives of Section 2000e–7, that Ordinance No. 5645 does not relieve them as employers from their obligations under Sections 2000e–2(a)(1)–(2) if the bisexual distinction created in Ordinance No. 5645 constitutes an unlawful employment practice. Plaintiffs assert that Ordinance No. 5645 requires them to "fail or refuse to hire . . . any individual [because of his] . . . sex." 42 U.S.C. § 2000e–2(a)(1). It would appear, however, that any conflict between No. 5645 and the Civil Rights Act of 1964 lies, not in the firing or hiring of female masseuses due to their sex, but rather in the ordinance's conflict with Section 2000e–2(a)–(2). The ordinance under examination does not restrict the employer in whom he can hire, as he does not violate the regulation until he permits a massagist to practice his occupation on a client of the opposite sex. However, in complying with the ordinance's directive, the employer is forced "to limit . . . his employees [masseuse or masseur] in [a] way which would deprive or tend to deprive [an] individual of employment opportunities." 42 U.S.C. § 4000e–2(a)(2). It is at this point that a conflict, if any, exists between No. 5645 and the Act unless the bisexual distinction is a lawful one. In this respect, Section 2000e–2(e) provides, *inter alia*, that "it shall not be an unlawful employment practice for an employer to hire and employ employees . . . on the basis of his religion, sex, or national origin in those certain instances where religion, sex, or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise, . . ." Although this section speaks only to hiring and firing, its operation also impliedly applies to employment opportunities. Thus, if an employer restricted the activities of an employee because the same was "necessary to the normal operation of that

particular business or enterprise," then the employer would be relieved of his statutory obligations under the Act. Accordingly, if the sexual barrier raised in this ordinance fell within the lawful parameters of a bona fide occupational qualification, under Section 2000e–7, the employer could permissibly restrict the activities of his massagists.

The basic guidelines to be used in determining whether a sexual distinction is legitimate (a bona fide occupational qualification) have been promulgated by the Equal Employment Opportunity Commission. 29 C.F.R. 1604 et seq. Guided by the prefatory policy that "the bona fide occupational exception as to sex should be interpreted narrowly," the Commission has submitted that the following bases are not sufficient to find a bona fide occupational qualification:

"(i) The refusal to hire women in general based on *assumptions of the comparative employment characteristics of women in general.*

"(ii) The refusal to hire an individual based on *stereotyped characterizations of the sexes. . . ."* (Emphasis added)

■ An examination of case law indicates that state law in conflict with the equal employment opportunities provision of Civil Rights Act of 1964 must withstand close judicial scrutiny. Thus, while "reasonable state protective legislation may constitute a bona fide occupational qualification," Weeks v. Southern Bell Telephone & Telegraph Co., 408 F.2d 228, 233 (5th Cir. 1969), state labor laws regulating the employment of females have been held invalid where they created artificial distinctions. Ridinger v. General Motors Corp., 325 F. Supp. 1089 (S.D.Ohio 1971), reversed on other grounds, 474 F.2d 949 (6th Cir. 1972). Cf. Potlatch Forests, Inc. v. Hays, 318 F.Supp. 1368 (E.D.Ark.1970), aff'd 465 F.2d 1081 (1972). See also, Joseph v. House, 353 F.Supp. 367 (E.D. Va., 1973), aff'd 482 F.2d 575 (4th Cir. 1973). Where the United States Constitution, however, reserves to the state an

*exclusive* power of regulation, state laws drawing bisexual lines do not conflict with the Act's provisions. Krauss v. Sacramento Inn, 314 F.Supp. 171 (E.D. Cal.1970) (state can permissibly regulate an incident of the retail sale of liquor—females may not sell liquor). Any comparison, however, between past federal case law holding state protective labor laws invalid because of the supervening provisions of Section 2000e–2 and the instant regulation must be considered carefully. Holding invalid a state statute restricting and regulating employment of females in workshops and factories of a state, Ridinger, *supra,* is not fully analogous to a statute prohibiting bisexual massages. The former dealt with a statute which sought to laudibly protect females from potentially hazardous conditions and failed in the face of the Civil Rights Act of 1964 because such a statute did not recognize that different women possess different capabilities. The ordinance under consideration, however, seeks to protect the community's sense of propriety, yet the ordinance's weakness is the same as in the former—it fails to recognize that not all female masseuses will abuse a historically legitimate occupation when permitted to massage clients of the opposite sex, nor will male masseurs commit lewd acts when they massage patrons of the opposite sex. Thus, while prior case law illustrating the preemptive conflict between state legislation that creates sexual restrictions and the Civil Rights Act of 1964 is not *factually* analogous to the instant ordinance, the principles are the same—in both instances the sex classifications failed to recognize that different individuals of the same sex behave differently. Ordinance No. 5645, however, treats all massagists of like sex as the same—with a presumption of illicit conduct. The infirmity is that this presumption is grounded on an individual's sex. In conclusion, it would appear that Ordinance No. 5645 does not comply with the spirit, if not the letter, of Section 2000e–2 of the Civil Rights Act of 1964. As this

conflict is real and not merely formal, the regulation must be declared invalid under the supremacy clause of the United States Constitution, Article 6, Clause 2.

### The Ordinance and the Fourteenth Amendment

Plaintiffs further argue that Ordinance No. 5645 denies them their fundamental right to pursue a legitimate business or occupation. Recognition by the Supreme Court of an individual's right to engage in a legitimate occupation has been articulated in Terrace v. Thompson, 263 U.S. 197, 44 S.Ct. 15, 68 L.Ed. 255 (1923); New State Ice Co. v. Liebmann, 285 U.S. 262, 52 S.Ct. 371, 76 L.Ed. 747 (1932); Traux v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed.2d 131 (1915).

In *Liebmann* the Supreme Court, in holding unconstitutional a statute regulating the sale and distribution of ice, submitted that:

" . . . a regulation which has the effect of denying or unreasonably curtailing the common right to engage in a lawful private business, such as that under review, cannot be upheld consistent with the Fourteenth Amendment. Under that amendment, nothing is more clearly settled than that it is beyond the power of a state, 'under the guise of protecting the public, arbitrarily [to] interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them.' (citing Burns Baking Co. v. Bryan, 264 U.S. 504, 513, 44 S.Ct. 412, 68 L. Ed. 813, and authorities cited; Liggett Co. v. Baldridge, 278 U.S. 105, 113, 49 S.Ct. 57, 73 L.Ed. 204)."

285 U.S. at 278.

As the commercial enterprise of administering massages is, per se, a legitimate occupation, the city in this instance must show a compelling state interest before this ordinance can be upheld. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Carrington v. Rash, 380 U.S.

89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). Most recently, the United States District Court for the Northern District of Texas stated, in holding unconstitutional a similar ordinance prohibiting bisexual massages:

"Since the ordinance infringes on the basic right to earn a livelihood, then the statutory scheme can only be justified by a compelling governmental interest."

Corey v. City of Dallas, 352 F.Supp. 977, 983 (N.D.Tex.1972)

■■ It is settled law that before a regulation can withstand judicial examination under the compelling interest test, the state (municipality) must show that there was no alternative method of achieving the objective sought. Shapiro v. Thompson, supra; Kramer v. Union Free School Dist., 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969). Additionally, the state must show that its interests are paramount to those of persons adversely affected by the state's prohibitions. It appears that in this instance there is available to the City viable, existing alternative methods of curtailing sexually illicit conduct—alternatives that place a less onerous burden on those who practice a historically legitimate occupation in a professionally responsible manner. The same objective sought in Ordinance No. 5645 can be satisfied by the enforcement of current state and local laws, such as state statutory and common law prohibitions against public nuisances and applicable state and local statutory prohibitions against lewdness. Additionally, there is nothing to prevent the City from regulating the *particulars* of massage establishments through more specific and less blanket-type prohibitions under examination here. For example, the City could prohibit the establishment, subject to licensing, from employing persons convicted of certain crimes; revoke a license of a licensee convicted of a crime involving sexual misbehavior; revoke a license of licensee whose employee was convicted of sexual misbehavior; regulate the hours during which a message establishment could lawfully operate; prohibit the administering of massages in private areas; prohibit the massaging of restricted areas of the body; and subject massage parlors to inspection by the City.

Weighing the alternatives available to plaintiffs in seeking to curtail sexual conduct that is offensive to the mores of the community against the rights of those who legitimately practice an otherwise legitimate occupation, we conclude that the rights of all massagists to exercise a legitimate occupation in a professionally responsible manner must be entitled to full recognition.

In summary, we hold that: (1) Sections 2 and 3 of Ordinance No. 5645 of the City of Knoxville, Tennessee, are in conflict with the equal employment opportunities provisions of the Civil Rights Act of 1964 and are, therefore, superceded by such federal provisions and, by virtue of the supremacy clause, are void and of no force and effect. 42 U.S.C. § 2000e et seq.; United States Constitution, Article 6, Clause 2. (2) Sections 2 and 3 of Ordinance No. 5645 of the City of Knoxville, Tennessee, are in conflict with the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and, due to the sweeping blanket prohibitions of the ordinance, are void.

It is the belief of this Court that defendants will abide by the Court's decision without the issuance of an injunction; however, if mistaken with respect to defendants' compliance, an injunction will issue to enjoin the enforcement of Sections 2 and 3 of Ordinance No. 5645 without a new hearing.