524 F.2d 571
 10 Empl. Prac. Dec. P 10,459
 COLORADO SPRINGS AMUSEMENTS, LTD. t/a Velvet Touch, et al., Appellees.
v.
Mayor Frank L. RIZZO of the City of Philadelphia et al., Appellants.
Max RUBENSTEIN t/a Philadelphia Health Club, et al., Appellees.
v.
Mayor Frank L. RIZZO, of the City of Philadelphia et al., Appellants.
 Nos. 75-1107, 75-1108.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 3, 1975.
Decided Oct. 16, 1975.
 
 Louis F. Hinman, III, James M. Penny, Jr., Asst. City Sols., Raymond Kitty, Deputy City Sol., Stephen Arinson, Chief Deputy City Sol., Sheldon L. Albert, City Sol., Philadelphia, Pa., for appellants.
 William J. Cottrell, Helen H. Cutner, Philadelphia, Pa., for appellees.
 Before VAN DUSEN, ADAMS and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 At issue in this appeal is the validity of an ordinance which prohibits employees of massage parlors licensed by a city from massaging anyone of the opposite sex.
 
 I.
 
 2
 City Council of Philadelphia determined in 1963 that illicit sexual activities often occurred in the massage parlors located in the city.[1] Its concern for the community's health and morals led it to respond with an attempt to regulate the massage parlor business. This was done by enactment in 1963 of section 9-610 of the Philadelphia Code, followed by the enactment in 1967 of section 9-611 of the Code. These sections establish a system of mandatory licensing for both the parlors themselves and those employees who work as masseurs or masseuses, subject to certain exceptions, combined with a system of penalties for violation of the ordinance. Section 9-610(4), which is challenged in this proceeding, provides:
 
 
 3
 Prohibited Conduct. No person employed or engaged in the business of a masseur or masseuse shall treat a person of the opposite sex.
 
 
 4
 Plaintiffs in these two consolidated actions are owners of and masseuses at massage parlors licensed under section 9-610 of the Philadelphia Code. They filed complaints in 1974 against various city officials and police officers, asserting that the prohibition in section 9-610(4) violates, on its face, federal civil rights statutes, the equal protection and due process clauses, and the ninth amendment. Declaratory and injunctive relief, as well as money damages, were sought.
 
 
 5
 Upon plaintiffs' motion for summary judgment, the district court declared the ordinance's prohibition of heterosexual massages unconstitutional. The court reasoned that the ordinance fashioned a classification based upon gender and that there was no rational relationship between the prohibition and the object sought to be accomplished, thus making out an equal protection violation. The district court further concluded that the ordinance created an irrebuttable presumption that heterosexual massages would result in illicit sexual behavior, that this presumption is not a reasonable one, and that the ordinance therefore also violates the due process clause. An injunction was granted against enforcement of the ordinance,[2] and the defendants took this appeal. We reverse.
 
 II.
 
 6
 The city officials advance four basic arguments. First, they point out that the district court was incorrect in finding an equal protection violation, since the ordinance applies equally to both male and female massagists. Thus, the classification created by section 9-610(4) is neutral on its face, the city officials contend, and does not have a gender-based discriminatory effect. They then maintain that because the ordinance treats males and females identically, by prohibiting both from massaging anyone of the opposite sex, Supreme Court decisions such as Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), and Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), which concern differential treatment of men and women, are not applicable.
 
 
 7
 A second line of attack by the city officials is that the Supreme Court has tacitly upheld the constitutionality of ordinances whose provisions are the same as those of section 9-610 in all material respects. This was accomplished by the Court's dismissal for want of a substantial federal question of four appeals from state court decisions upholding similar ordinances against challenges identical to those asserted here. The Supreme Court's recent decision in Hicks v. Miranda, 43 U.S.L.W. 4857, 4860, 95 S.Ct. 2281, 45 L.Ed.2d 223 (U.S.1975), is proffered for the rule that these four dismissals amount to adjudications on the merits.[3]
 
 
 8
 Also urged by the city officials is the contention that the ordinance is a valid exercise of the municipality's police power, in that it protects the health, safety, and moral welfare of the general public. In meeting this legitimate end, the argument continues, the ordinance does not arbitrarily deprive massage parlor owners of their property, but merely regulates the massage business in an inoffensive manner.
 
 
 9
 Finally, the city officials submit that the Civil Rights Act of 1964 does not apply to the massage parlors here because there has been no allegation or proof that they have the requisite fifteen employees to bring them within the prohibitions of the Act. 42 U.S.C. § 2000e(b) (Supp. III, 1973).[4]
 
 
 10
 The massage parlor owners and employees present a multi-faceted line of argument in support of their assertion that the district court's judgment should be affirmed. Conceding that the ordinance on its face treats persons of both sexes equally, they first claim that it is nonetheless unconstitutional because legislation which treats members of each sex in an equally reprehensible manner denies equal protection of the laws to all. This contention has three branches. The first is that the legislation fails to consider individuals on the basis of their own capacities, and instead unreasonably characterizes the group to which individuals belong, in contravention of the rule set down in McLaughlin v. Florida, 379 U.S. 184, 191, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). The second is that section 9-610(4) establishes a constitutionally impermissible presumption that illicit sexual conduct is apt to occur when a customer is massaged by someone of the opposite sex. The third branch is that the ordinance creates a sex-based classification and invidiously discriminates on that basis.
 
 
 11
 The plaintiffs also suggest that enforcement of section 9-610(4) would require them to violate section 703(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) (1970). This assertion is based on the assumption that the massagists would be forced either to employ people of only one gender if they had to comply with the ordinance, or to deprive individuals of employment opportunities because of their sex. In either case, the owners claim, they would be required to breach the duty set out in the Civil Rights Act.
 
 
 12
 Basing their third challenge upon the equal protection clause, the massagists contend that City Council carved out wholly irrational exceptions to the ordinance. Specifically, they point out that section 9-610(5) exempts massage treatments given under the direction of a medical practitioner. The argument is that some individuals who massage persons of the opposite sex, will, concededly, engage in lewd behavior; that such behavior does not depend upon the presence or absence of a supervising physician; and that a legislative body could not rationally determine that it does. The argument continues that the exemption set forth in the ordinance is thus not reasonably related to the legitimate governmental interest in prohibiting illicit sexual activity, and that, consequently, the ordinance must fall under the equal protection clause.
 
 
 13
 Plaintiffs' fourth claim is that the ordinance abridges the fundamental right to pursue a livelihood by disenabling every licensed massagist from serving approximately fifty per cent of the public. This challenge proceeds in the following manner: people have a constitutional right to pursue a lawful livelihood, such as the massage business, without being arbitrarily limited by any legislative body; strict judicial scrutiny of any restrictive legislation is therefore required; the city has failed to sustain its burden of demonstrating a compelling interest in the prohibition created by section 9-610(4); and the presence of less restrictive means of achieving the same goal attests to the fact that there is no strong governmental interest in the ordinance as it now stands.
 
 
 14
 The fifth argument by the plaintiffs is that the ordinance establishes an irrebuttable presumption that persons massaging someone of the opposite sex are likely to engage in illegal sexual acts. This is asserted to be an irrational presumption, so that the ordinance consequently violates due process.[5]
 
 
 15
 Finally, the plaintiffs claim that the ordinance encroaches upon an area sex offenses over which the Pennsylvania Legislature has intended to exert sole control. And, they assert, the city's attempt to legislate in this preempted field thus violates due process and is necessarily invalid.
 
 III.
 
 16
 The Supreme Court's decision last term in Hicks v. Miranda, 43 U.S.L.W. 4857, 95 S.Ct. 2281, 45 L.Ed.2d 223 (U.S.1975), is dispositive of most of the plaintiffs' contentions in this case.
 
 
 17
 There is no longer any doubt that a dismissal of an appeal by the Supreme Court for want of a substantial federal question is an adjudication on the merits. Hicks, which decided this issue, arrived in the Supreme Court in a rather complicated procedural posture. After entry of state court judgments that the film "Deep Throat" is obscene under the California obscenity statute, Miranda and others filed an action in the federal district court seeking declaratory relief and an injunction against the statute's enforcement. A three-judge district court declared the California statute unconstitutional and granted relief. The defendant state officials subsequently moved for rehearing, for amendment of the judgment, and for relief from the judgment. In support they cited the order of the Supreme Court in Miller v. California, 418 U.S. 915, 94 S.Ct. 3206, 41 L.Ed.2d 1158 (1974). The Miller case was decided subsequent to entry of the three-judge court's judgment in Hicks. In Miller, the Supreme Court dismissed for want of a substantial federal question an appeal from a California court decision upholding the constitutionality of the obscenity statute that the three-judge court had just declared unconstitutional.[6] Upon denial of their motions by the district court, the state officials appealed to the Supreme Court.[7]
 
 
 18
 On appeal, the state officials argued that the Miller dismissal was binding on the three-judge court and should have led it to declare the California statute constitutional. The Supreme Court agreed with them.[8] Justice White, writing for the Court, held that Miller was properly within the Supreme Court's appellate jurisdiction under § 1257(2), leaving no discretion for the Court to refuse to decide the case on the merits. The Supreme Court had ruled that Miller's constitutional challenge to the California statute was not a substantial one, and "the three-judge court was not free to disregard (that) pronouncement."[9]
 
 
 19
 By parity of reasoning, we are not free to disregard three dismissals by the Supreme Court, for want of a substantial federal question, of challenges to ordinances identical in all material respects to the one in question here. A reading of the appeal papers shows that the orders dismissing the appeals in Smith v. Keater,[10] Rubenstein v. Cherry Hill,[11] and Kisley v. City of Falls Church[12] are precedent for rejecting all but two of the contentions raised in opposition to section 9-610(4) of the Philadelphia Code.[13] The dismissal by the Supreme Court in these three cases dispose of the plaintiffs' claims based upon equal, but reprehensible, treatment of both sexes;[14] an invidiously discriminatory sex-based classification;[15] an irrational exception in the ordinance for massage treatments given under the direction of a medical practitioner;[16] unreasonable abridgement of the right to pursue a legitimate livelihood;[17] and the irrebuttable presumption doctrine.[18] Our reasoning in reaching this conclusion is supported by the similar approach taken by the Fourth Circuit in its recent decision in Hogge v. Johnson.[19]
 
 
 20
 Two contentions by the plaintiffs remain. The first is the claim based on the Civil Rights Act of 1964. The owners' argument is that compliance with section 9-610(4) of the ordinance would force them to breach section 703(a)(1)[20] and section 703(a)(2)[21] of the Act, which respectively prohibit refusal to hire and deprivation of employment opportunities on the basis of sex. That claim must fail, however, at least in this case. This is so because section 703(a) of the Civil Rights Act applies only to employment practices by an "employer," and section 701(b)[22] defines an employer as "a person . . . who has fifteen or more employees . . . ." It is neither alleged nor in any way suggested that any of the owners employ this number of persons. There is thus no violation of the Civil Rights Act.
 
 
 21
 The plaintiffs also assert that the City's power to legislate in the area of sex offenses is preempted by state legislation. See, e.g., 18 Pa.Stat.Ann. §§ 3121-27, 5901-04 (1973). They urge us to follow the ruling to that effect delivered in an analogous situation by the California Supreme Court in Lancaster v. Municipal Court,[23] and further claim that the city's enactment and enforcement of an ordinance in this preempted area violates due process.
 
 
 22
 Under Pennsylvania law, a municipality is not prohibited from legislating in a particular field of the law "unless the Commonwealth has explicitly claimed the authority itself, or unless there is such actual, material conflict between the state and local powers that only by striking down the local power can the power of the wider constituency be protected."[24] Although the city ordinance supplements state legislation regarding sex offenses, we cannot say that the ordinance must be struck down under this standard. Since the local legislation is valid, its enforcement does not violate due process either.
 
 
 23
 The judgment of the district court will be reversed.[25]
 
 
 
 [1]
 The City Council held hearings in 1963 at which testimony was given about this matter. Defendants' Memorandum Sur Motion for Summary Judgment at 3-5, filed in the district court during pendency of the action there
 
 
 [2]
 It was not necessary to convene a three-judge district court under 28 U.S.C. § 2281 in order to enjoin enforcement of the local ordinance, since the statute applies "only when a state statute of general and statewide application is sought to be enjoined." Moody v. Flowers, 387 U.S. 97, 101, 87 S.Ct. 1544, 1548, 18 L.Ed.2d 643 (1967)
 
 
 [3]
 Although Hicks was not mentioned in their brief, the city officials cited it during oral argument. The plaintiffs were given an opportunity to submit their views regarding Hicks to the Court following the argument, and they filed a letter-brief
 
 
 [4]
 The city officials' brief does not address that portion of the district court's opinion resting upon the irrebuttable presumption/due process doctrine; nor was this issue discussed at oral argument
 
 
 [5]
 This contention is nearly identical with that which is noted above and identified as the second branch of the massagists' first major argument
 
 
 [6]
 Appellants in Miller had taken an appeal under 28 U.S.C. § 1257(2) (1970), which provides:
 Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court . . . (b)y appeal, where is drawn in question the validity of a statute of any state on the ground of its being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor of its validity.
 
 
 [7]
 The Supreme Court had jurisdiction over the appeal by virtue of 28 U.S.C. § 1253 (1970)
 
 
 [8]
 The Supreme Court was required to decide the issue. If Miller was binding on the three-judge court, as appellants asserted, the merits of the claim would already have been decided, rendering the constitutional question "wholly insubstantial" and obviating the need for a three-judge court, Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962). This in turn would have eliminated the Supreme Court's § 1253 jurisdiction over that issue, Hagans v. Lavine, 415 U.S. 528, 543-45, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); Perez v. Ledesma, 401 U.S. 82, 86-87, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971), leaving the Supreme Court unable to hear that part of the case. The necessity of ruling on the issue makes it clear that the Court's discussion of it was not dicta, but a holding which we are obliged to follow
 The fact that the Supreme Court actually took § 1253 jurisdiction in Hicks does not change this result. Jurisdiction was based upon an appeal from the three-judge court's decision on a separate challenge to the California search warrant statutes, not addressed in Miller, 43 U.S.L.W. at 4861, 95 S.Ct. 2281. The Supreme Court could hear a § 1253 appeal on that basis.
 Although Justice Stewart wrote that "(t)here are many aspects of the Court's opinion that seem . . . open to serious challenge," his dissent, joined by three other Justices, was directed solely to a separate issue in the case. 43 U.S.L.W. at 4863, 95 S.Ct. at 2293. Thus, the Court was unanimous on the meaning of a dismissal for want of a substantial federal question.
 
 
 [9]
 43 U.S.L.W. at 4860, 95 S.Ct. at 2289. The Hicks holding was limited, as it had to be, to situations in which the issues in a given case and those in the case previously disposed of by dismissal for want of a substantial federal question "were sufficiently the same that (the latter) was a controlling precedent." This requires a determination of "what issues had been properly presented in (the latter case) and declared by (the Supreme) Court to be without substance." Id. n.14
 
 
 [10]
 419 U.S. 1043, 95 S.Ct. 613, 42 L.Ed.2d 636, dismissing for want of a substantial federal question 285 N.C. 530, 206 S.E.2d 203 (1974)
 
 
 [11]
 417 U.S. 963, 94 S.Ct. 3165, 41 L.Ed.2d 1136 (1974), dismissing for want of a substantial federal question No. 10,027 (N.J.Sup.Ct., Jan. 29, 1974)
 
 
 [12]
 409 U.S. 907, 93 S.Ct. 237, 34 L.Ed.2d 169, dismissing for want of a substantial federal question 212 Va. 693, 187 S.E.2d 168 (1972)
 
 
 [13]
 The appeals in Smith, Rubenstein, and Kisley were all brought under § 1257(2), see note 6 supra, as was the appeal in Miller, discussed in the Hicks opinion
 Patterson v. City of Dallas, 372 U.S. 251, 83 S.Ct. 873, 9 L.Ed.2d 732 (1963), dismissing for want of a substantial federal question 355 S.W.2d 838 (Tex.Civ.App.1962), cited in the city officials' brief, is not apposite. Although it involved a challenge to the application of an ordinance nearly identical to § 9-610(4), the factual record was a critical aspect of the case. It thus has no applicability to the constitutionality, on its face, of § 9-610(4).
 
 
 [14]
 Jurisdictional Statement at 3, 8, Rubenstein v. Cherry Hill, 417 U.S. 963, 94 S.Ct. 3165, 41 L.Ed.2d 1146 (1974)
 
 
 [15]
 Jurisdictional Statement at 10, Smith v. Keator, 419 U.S. 1043, 95 S.Ct. 613, 42 L.Ed.2d 636 (1974); Jurisdictional Statement at 3, 7, Rubenstein v. Cherry Hill, 417 U.S. 963, 94 S.Ct. 3165, 41 L.Ed.2d 1136 (1974)
 
 
 [16]
 Jurisdictional Statement at 3, 7, Kisley v. City of Falls Church, 409 U.S. 907, 93 S.Ct. 237 (1972). Kisley involved an exemption for massages given in beauty parlors and barber shops. This is similar enough to the present exemption for application of the Hicks rule
 
 
 [17]
 Jurisdictional Statement at 2-3, 7, Kisley v. City of Falls Church, 409 U.S. 907, 93 S.Ct. 237 (1972). Counsel cited New State Ice Co. v. Liebmann, 285 U.S. 262 (1932), for this challenge to the ordinance. While the Kisley dismissal disposes of this issue, we note that New State Ice was handed down during the era when the now long-discarded doctrine of substantive due process in the economic field was still in ascendance. It is thus of questionable relevance today. Ferguson v. Skrupa, 372 U.S. 726, 730-32, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963). See also Kahn v. Shevin, 416 U.S. 351, 356 n.10, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974); North Dakota State Board of Pharmacy v. Snyder's Drug Stores, Inc., 414 U.S. 156, 164-67, 94 S.Ct. 407, 38 L.Ed.2d 379 (1973); Dandridge v. Williams, 397 U.S. 471, 484-85, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)
 
 
 [18]
 Jurisdictional Statement at 10, Rubenstein v. Cherry Hill, 417 U.S. 963, 94 S.Ct. 3165, 41 L.Ed.2d 1136 (1974)
 
 
 [19]
 --- F.2d --- (4th Cir., 1975)
 
 
 [20]
 42 U.S.C. § 2000e-2(a)(1) (1970)
 
 
 [21]
 42 U.S.C. § 2000e-2(a)(2) (Supp. III, 1973)
 
 
 [22]
 42 U.S.C. § 2000e(b) (Supp. III, 1973)
 
 
 [23]
 6 Cal.3d 805, 494 P.2d 681, 100 Cal.Rptr. 609 (1972)
 
 
 [24]
 United Tavern Owners v. Philadelphia School District, 441 Pa. 274, 280, 272 A.2d 868, 871 (1971)
 
 
 [25]
 The district court did not have the benefit of the Supreme Court's ruling in Hicks v. Miranda when it entered its judgment