Sworn & Subscribed
to before me this
2d day of October, 1977

/s/ Adam Mangino
Adam Mangino
Special Agent, DEA

/s/ Serena Perrett,
Serena Perrett, U S Magistrate

**Kathleen S. STRATTON et al.**

**v.**

**Clarence A. DRUMM, Individually and as Chief of Police for the Town of East Hartford, et al.**

**Civ. No. H-77-545.**

United States District Court,
D. Connecticut.

Feb. 23, 1978.

Samuel H. Teller, East Hartford, Conn., Edward T. Lynch, Jr., New Britain, Conn., for plaintiffs.

Stephen C. Barron, Chief Assistant Corp. Counsel, East Hartford, Conn., for defendants.

RULING ON MOTION FOR PRELIMI-
NARY INJUNCTION

BLUMENFELD, District Judge.

This action is brought under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3), and under the Declaratory Judgments Act, 28 U.S.C. §§ 2201, 2202, to prevent the Town of East Hartford, Connecticut, from enforcing an amendment to its Massage Parlor Ordinance, East Hartford Code of Ordinances § 12–60(a), (c), which forbids massagists to administer massages to persons of the opposite sex.[1] The plaintiffs are operators and female employees of two massage parlors licensed under the ordinance. Defendants include the town, the mayor, the chief of police, and the members of the Town Council. In addition to claims made under state law,[2] plaintiffs contend that § 12–60 conflicts with Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a), denies them the equal protection of the law, deprives them of property rights without due process of law, impairs their freedom of contract, invades their right of privacy and freedom of association, and constitutes an impermissible exercise of the police power.

The ordinance, passed in 1975, sets numerous requirements for the operation of massage parlors, provides for issuance of permits to massagists and massage parlors, and requires regular inspections by city officials. The amendment now at issue was passed October 4, 1977, with an effective date of October 28. The complaint in this action was filed on October 25, 1977, and a temporary restraining order was entered on the same day pending a hearing on plaintiffs' motion for a preliminary injunction. An evidentiary hearing was held on November 3, 1977.

The complaint states that the plaintiffs are duly licensed by the town under existing provisions of the Massage Parlor Ordinance, and have made substantial financial commitments to their business and occupation.[3] Because nearly all massage customers are male, it is alleged that enforcement of § 12–60 would deprive the female massagist plaintiffs of their employment. Because there are no licensed male massagists in East Hartford, the operator plaintiffs claim that § 12–60 would force them out of business. They have moved for an injunction *pendente lite* to restrain enforcement of § 12–60 and prevent these injuries.

I.

Defendants do not contest this court's jurisdiction to hear this action under 28 U.S.C. § 1343(3). However, they argue that the court should abstain from ruling on the issues presented here, because a similar action between the same parties is now

1. The challenged provisions read as follows:

 "(a) No person holding a permit under this Article shall treat a person of the opposite sex, except upon the signed order of a licensed physician, osteopath, chiropractor, or registered physical therapist, which order shall be dated and shall specifically state the number of treatments, not to exceed ten (10). The date and hour of each treatment given and the name of the operator shall be entered on such order by the establishment where such treatments are given and shall be subject to inspection by the police pursuant. The requirements of this Subsection shall not apply to treatments given in the residence of a patient, the office of a licensed physician, osteopath or registered physical therapist, chiropractor, or in a regularly established and licensed hospital or sanitarium.

 . . . . .

 (c) No person owning, operating or managing a massage parlor shall knowingly cause, allow or permit in or about such massage parlor, any agent, employee, or any other person under his control or supervision to perform such acts prohibited in Subsections (a) and/or (b) of this Section."

2. Plaintiffs argue that Conn.Gen.Stat. § 19–49b, which authorizes the state commissioner of health to adopt regulations regarding massage establishments, preempts the field and deprives the town of its authority to enact the ordinance. They also claim that § 12–60 conflicts with state anti-discrimination statutes, Conn. Gen.Stat. §§ 4–61d, 31–126, 53–34. See Part V, *infra.*

3. Massagists must complete a training course of at least 70 hours at a "recognized school" to qualify for a permit, §§ 12–38(6), 12–43(7), and must pay a filing fee of $25.00, § 12–42. Operators of massage establishments must pay a filing fee of $125.00. § 12–40. (This fee was raised to $1,000.00 by the 1977 amendments.) Additionally, plaintiff Gerrold A. Stratton, proprietor of the House of Foxes establishment, testified that he has invested $40,000 in the operation of his business.

pending in the state court. In that case, the superior court denied plaintiffs' motion for a preliminary injunction against enforcement of the Massage Parlor Ordinance. *King's Ransom, Inc. v. City of East Hartford,* No. 201218 (Hartford County Super. Ct., filed Mar. 23, 1976). Defendants have pointed out that "[s]tate courts are competent to decide questions arising under the federal constitution, and federal courts most assuredly do not provide a forum in which disgruntled parties can re-litigate federal claims which have been presented to and decided by state courts." *Deane Hill Country Club, Inc. v. City of Knoxville,* 379 F.2d 321, 325 (6th Cir.), *cert. denied,* 389 U.S. 975, 88 S.Ct. 476, 19 L.Ed.2d 467 (1967) (citations omitted).

However, the state court was never presented with the objections now raised to § 12–60. The superior court has before it the provisions of the Massage Parlor Ordinance passed in 1975. Since the 1977 amendments have not been challenged in the state court, principles of comity and federalism do not call for abstention by this court.

## II.

■ The following standards govern a motion for a preliminary injunction:

"To obtain the preliminary relief he seeks the movant must make ' "a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief." ' *Triebwasser & Katz v. American Telephone & Telegraph Co.,* 535 F.2d 1356, 1358 (2d Cir. 1976) (emphasis in original), quoting *Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir. 1973); *see Pride v. Community School Board,* 482 F.2d 257, 264 (2d Cir. 1973). Further, it should be emphasized that such preliminary injunctive relief can be awarded only upon a *clear* showing that the movant is entitled to the relief, *Triebwasser & Katz v. American Telephone & Telegraph Co., supra* at

1358; *Sonesta International Hotels Corp. v. Wellington Associates, supra* at 250, and that in making such a showing the movant bears a heavy burden, *Pride v. Community School Board, supra* at 264." *New York v. Nuclear Regulatory Commission,* 550 F.2d 745, 750 (2d Cir. 1977). Plaintiffs contend that preliminary relief is appropriate under either of these standards. This discussion will be directed primarily to the questions of irreparable injury and probable success on the merits.

■ Plaintiffs' claim that enforcement of § 12–60 would cause irreparable damage is supported by testimony. Witnesses testified that about 99 percent of all massage customers are male. If females could not legally administer massages to males, the massagist plaintiffs would effectively be barred from their occupation in the town of East Hartford. Currently there are no males licensed as massagists in East Hartford, and it would take a male applicant at least 30 days to obtain a license under current procedures. If the amendment were enforced, the operator plaintiffs would be forced to close their businesses, because no massagists legally qualified to serve their male customers would be available for employment. No remedy at law would be available to compensate plaintiffs for the loss of employment and business. *Cf. Joseph v. House,* 353 F.Supp. 367, 375 (E.D. Va.), *aff'd sub nom. Joseph v. Blair,* 482 F.2d 575 (4th Cir.), *reh'g denied,* 488 F.2d 403 (4th Cir. 1973), *cert. denied,* 416 U.S. 955, 94 S.Ct. 1968, 40 L.Ed.2d 305 (1974). I therefore conclude that plaintiffs have made a sufficiently clear showing of possible irreparable injury.

## III.

Turning to the question of the likelihood of success on the merits, it must first be noted that consideration of plaintiffs' primary constitutional claims has been foreclosed by recent decisions of the United States Supreme Court. That Court has thrice dismissed appeals from state court decisions sustaining local legislation essentially identical to § 12–60. *Smith v. Keator,* 419 U.S. 1043, 95 S.Ct. 613, 42 L.Ed.2d 636 (1974), *dismissing for want of a substantial*

*federal question* 285 N.C. 530, 206 S.E.2d 203 (1974); *Rubenstein v. Township of Cherry Hill,* 417 U.S. 963, 94 S.Ct. 3165, 41 L.Ed.2d 1136 (1974), *dismissing for want of a substantial federal question,* No. 10,027 (N.J.Sup.Ct., Jan. 29, 1974); *Kisley v. City of Falls Church,* 409 U.S. 907, 93 S.Ct. 237, 34 L.Ed. 169 (1972), *dismissing for want of a substantial federal question* 212 Va. 693, 187 S.E.2d 168 (1972).

■ When a case is within the appellate jurisdiction of the Supreme Court, 28 U.S.C. § 1257(1), (2), and that Court dismisses the appeal for want of a substantial federal question, the dismissal is a ruling on the merits which binds lower courts in subsequent cases. *Hicks v. Miranda,* 422 U.S. 332, 343–45, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). Dismissal is a summary action, and the Court publishes no written opinions to articulate the principles on which its decision is based. Thus, when a lower court is cited to a summary dismissal as binding precedent, "its initial task [is] to ascertain what issues [were] properly presented [in the earlier case] and declared by [the] Court to be without substance." *Id.,* 422 U.S. at 345 n.14, 95 S.Ct. at 2290.

■ In each of the three cases cited above, the Supreme Court was asked to decide whether an ordinance prohibiting administration of massages to persons of the opposite sex in commercial establishments violated the equal protection or due process clauses of the fourteenth amendment. Statement As To Jurisdiction, *Smith v. Keator, supra, summarized in* 43 U.S.L.W. 3270 (1974); Statement As To Jurisdiction, *Rubenstein v. Township of Cherry Hill, supra, summarized in* 42 U.S.L.W. 3637 (1974); Statement As To Jurisdiction, *Kisley v. City of Falls Church, supra, summarized in* 41 U.S.L.W. 3123 (1972). Other courts have adhered to these decisions in rejecting constitutional challenges to similar ordinances. *Tomlinson v. Mayor of Savannah,* 543 F.2d

570 (5th Cir. 1976); *Hogge v. Johnson,* 526 F.2d 833 (4th Cir. 1975), *cert. denied,* 428 U.S. 913, 96 S.Ct. 3228, 49 L.Ed.2d 1221 (1976); *Colorado Springs Amusements, Ltd. v. Rizzo,* 524 F.2d 571 (3d Cir. 1975), *cert. denied,* 428 U.S. 913, 96 S.Ct. 3228, 49 L.Ed.2d 1222 (1976); *Brown v. Haner,* 410 F.Supp. 399 (W.D.Va.1976).

■ The argument that state police powers may not constitutionally be used to control these activities was also raised and dismissed in *Rubenstein v. Township of Cherry Hill, supra.* Plaintiffs' claim that § 12–60 abridges their right to privacy and freedom of association is clearly without merit, because those rights do not extend to commercial ventures. *Brown v. Haner, supra; see Paris Adult Theatre I. v. Slaton,* 413 U.S. 49, 65–66, 93 S.Ct. 2628, 37 L.Ed.2d 446, *reh'g denied,* 414 U.S. 881, 94 S.Ct. 27, 38 L.Ed.2d 128 (1973). Nor does § 12–60 offend the Constitution by limiting the freedom to enter contracts. *Cf. Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *Day-Brite Lighting, Inc. v. Missouri,* 342 U.S. 421, 72 S.Ct. 405, 96 L.Ed. 469, *reh'g denied,* 343 U.S. 921, 72 S.Ct. 674, 96 L.Ed. 1334 (1952).

Title VII of the Civil Rights Act of 1964, the basis of plaintiffs' last remaining claim under federal law, was also invoked in one of the three Supreme Court appeals discussed above. In *Rubenstein v. Township of Cherry Hill, supra,* appellants stated that a question presented by their appeal was "[w]hether Ordinance 71–51 is repugnant to federal law in that it conflicts with the purposes sought to be achieved by 42 U.S.C. § 2000–e [*sic*] of the 1964 Civil Rights Act and thus is violative of Article VI of the United States Constitution." Statement As To Jurisdiction, at 3. In that case, however, appellants did not claim that the statute controlled their case directly. Title VII applies only to "employers" as defined in § 701(b) of the Act, 42 U.S.C. § 2000e(b).[4]

---

4. The definition is as follows:

 "For the purposes of this subchapter—

 . . . . .

 (b) The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include (1) the United States, a corporation wholly owned by the Government of the United States, an Indian tribe, or any department or agency of the

*See Hogge v. Johnson, supra,* 526 F.2d at 835–36; *Colorado Springs Amusements, Ltd. v. Rizzo, supra,* 524 F.2d at 576–77. The trial court in *Rubenstein* noted in an oral opinion, which was affirmed without opinion by the Appellate Division of the New Jersey Superior Court and the New Jersey Supreme Court, that counsel for plaintiffs had agreed in their oral argument that Title VII did "not apply directly since the requisite conditions set forth by that Act" were not present. Statement As To Jurisdiction, at C–2. Nothing in the record indicated that the appellants were "employers" as defined in the Act. Answering Brief of Appellee, at 9. Had the Court given plenary consideration to the case, it would not have been called upon to decide whether the federal statute conflicted with the township ordinance, because Title VII by its terms did not apply to the plaintiffs. The question before the Court, and held by it to be without substance, was whether persons excluded from the coverage of Title VII could escape enforcement of the massage ordinance.[5] If in the present case the operator plaintiffs are not shown to be § 701(b) "employers," their Title VII claim is clearly and directly controlled by the dismissal in *Rubenstein.* Since their other federal-law claims are also foreclosed by clear precedents, this court would lack jurisdiction over this action under 28 U.S.C. § 1343(3). *Cf. McFaddin Express, Inc. v. Adley Corp.,* 346 F.2d 424, 427 (2d Cir. 1965), *cert. denied,* 382 U.S. 1026, 86 S.Ct.

District of Columbia subject by statute to procedures of the competitive service (as defined in section 2102 of Title 5), or (2) a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of Title 26, except that during the first year after March 24, 1972, persons having fewer than twenty-five employees (and their agents) shall not be considered employers."

5. The *Rubenstein* case thus decided whether, in the language of § 1104 of the Act, note 6, *infra,* this kind of ordinance provision "is inconsistent with any of the purposes" of the Act, but not whether it is inconsistent with "any provision thereof."

6. Section 708, 42 U.S.C. § 2000e–7, states: "Nothing in this subchapter [Title VII] shall be deemed to exempt or relieve any

643, 15 L.Ed.2d 539 (1966). If on the other hand, the operator plaintiffs meet the definition in § 701(b), the case presents a different issue which has not been resolved by our highest Court.

### IV.

 A state or local law cannot be enforced if its effect is to require or permit an employment practice forbidden by Title VII. *See* § 708, 42 U.S.C. § 2000e–7; *see generally* § 1104, 42 U.S.C. § 2000h–4;[6] *Homemakers, Inc. v. Division of Industrial Welfare,* 509 F.2d 20 (9th Cir. 1974), *cert. denied,* 423 U.S. 1063, 96 S.Ct. 803, 46 L.Ed.2d 655 (1976). Here it is contended that § 12–60 of the East Hartford ordinance conflicts with § 703(a) of the Act, 42 U.S.C. § 2000e–2(a), which provides:

"It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter."

Section 1104, 42 U.S.C. § 2000h–4, reads: "Nothing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field in which any such title operates to the exclusion of State laws on the same subject matter, nor shall any provision of this Act be construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this Act, or any provision thereof."

This issue was presented in three prior federal decisions. In *Joseph v. House, supra*, 353 F.Supp. at 374–75, the court granted a preliminary injunction against enforcement of similar ordinances, finding a likelihood of success on the Title VII claim. In *Cianciolo v. Members of City Council*, 376 F.Supp. 719, 722–24 (E.D.Tenn. 1974), the court entered a declaratory judgment holding such an ordinance invalid. The court noted that the ordinance controlled the employer's choice in assigning employees to particular tasks and not in employing them:

> "The ordinance under examination does not restrict the employer in whom he can hire, as he does not violate the regulation until he permits a massagist to practice his occupation on a client of the opposite sex. However, in complying with the ordinance's directive, the employer is forced 'to limit . . . his employees [masseuse or masseur] in [a] way which would deprive or tend to deprive [an] individual of employment opportunities.' 42 U.S.C. § 4000e–2(a)(2). [*sic*]" *Id.*, 376 F.Supp. at 722 (brackets in original).

Judge Taylor stated that the ordinance sought to protect "the community's sense of propriety" by preventing illicit sexual behavior; it conflicted with § 703(a)(2) of Title VII because it was based on conduct presumed illegal solely because of the sex of the massagist. *Id.*, 376 F.Supp. at 723.[7]

In the third case, a massage parlor had gone out of business after a similar ordinance went into effect. A female massagist and her former employer brought an action against city officials under Title VII, claiming that the ordinance had forced the employer to fire the massagist because of her sex. The Court of Appeals for the Fourth Circuit affirmed the dismissal of the complaint. *Aldred v. Duling*, 538 F.2d 637 (4th Cir. 1976). Because in ceasing to do business the employer had fired all of his employees, including a male manager, the court found that no sex discrimination had occurred. It found no conflict between the ordinance and Title VII:

> "The restrictions imposed by the Richmond ordinance apply equally to males and females; neither can perform massages on customers who are members of the opposite sex. Until [the ordinance became effective], Bo-Jac's all-male clientele had requested masseuses exclusively. The ordinance simply prohibits such a practice. It does not, as a legal matter, require Bo-Jac to hire or fire anyone; nor on its face, does it restrict the gender of the customers that Miss Masseuse may serve. As a practical matter, the ordinance made unlawful the only business Bo-Jac had conducted, the business of supplying masseuses to service male customers, but, surely, Title VII cannot be read to foreclose the enactment of ordinances which have the effect of making unlawful conduct which may not have been unlawful when Title VII was enacted. [The female massagist] was not discharged because of her sex; her employment was terminated because her employer went out of business. It had no work to be done which [she] could lawfully perform." *Id.*, 538 F.2d at 638.

The court in *Aldred* was faced with a massagist who had lost her job. It focused only on whether the ordinance in question required her employer to dismiss her. On its face, of course, such an ordinance allows the employment of massagists of either sex. It is the realities of the massage business, in combination with the ordinance, that cause a loss of employment and business. Female massagists must lose their jobs only because all or nearly all massage customers are male. Similarly, massage parlors must cease operating only because those male customers have no interest in being massaged by males.

---

7. It is not to be denied that there is a public interest in preventing illicit sexual conduct. But if illicit conduct is the target of these ordinances, they have missed their mark. They are directed at a legitimate business, and they prohibit legitimate massages as well as illicit ones. There is no basis for a presumption that illicit conduct will occur whenever a massagist treats a person of the opposite sex, and other means may be employed to prohibit and prevent its occurrence. The ordinances conflict with Title VII because the presumption of illicit conduct is based solely on the sex of the person administering the massage. *See Cianciolo v. Members of City Council, supra*, 376 F.Supp. at 723.

Regardless of such business conditions, however, such an ordinance requires an employer "to limit, segregate or classify his employees" by sex. He must assign to each customer a massagist of the same sex. Even if the massage clientele were equally divided between the sexes, a female massagist could not compete with males for the work of massaging male customers, and a male massagist could not compete with females for the work of massaging female customers. As the court recognized in *Cianciolo v. Members of City Council, supra,* the ordinance "would deprive or tend to deprive" both male and female massagists "of employment opportunities . . . because of [their] . . . sex . . ." § 703(a)(2), *supra.*

The court in *Aldred* reasoned correctly that such an ordinance does not require dismissal of any employee, but it did not address the prohibition in § 703(a)(2). Its statement that Title VII permits the enactment of ordinances forbidding certain conduct ignores the plain meaning of §§ 708 and 1104, see note 6, *supra.* In the instant action, I would adopt the reasoning of the *Cianciolo* decision and hold East Hartford Code of Ordinances § 12–60(a), (c), to be in conflict with § 703(a)(2), *supra,* and therefore invalid under the supremacy clause, U.S.Const. art. VI, cl. 2, insofar as it is applied to "employers," as defined in § 701(b), see note 4, *supra,* and to their employees.

## V.

■ Defendants argue that the operator plaintiffs have failed to show that they are "employers" under § 701(b). Plaintiffs Gerrold A. Stratton and Gladys Filippone, who are respectively owner and manager of the House of Foxes massage parlor, testified that the establishment has 16 employees who work more than 20 hours per week, and employee time records were submitted to corroborate their testimony. Ms. Filippone also testified concerning transactions that establish an effect on interstate commerce. As defendants point out, the witnesses relied on hearsay from their accountant in stating that more than 15 employees had worked for the House of Foxes for the requisite period. However, at this stage the court need only decide whether plaintiffs can probably prevail on their claim. The evidence was sufficient to show a probability that Stratton is a § 701(b) "employer." Therefore, he and his employees are entitled to a preliminary injunction. Because these plaintiffs are likely to succeed on their Title VII claim, it is unnecessary to consider their claims arising under state law.

■ No evidence was offered at the hearing regarding the second plaintiff-employer, King's Ransom, Inc. Since the court has no basis for assessing the probability that it is a § 701(b) "employer," it cannot be said that King's Ransom will probably prevail on the merits, or that it has raised "sufficiently serious questions going to the merits" of its Title VII claim, *New York v. Nuclear Regulatory Commission, supra.* Because the other federal-law claims stated by plaintiffs are clearly lacking in merit under prior Supreme Court decisions, see part III, *supra,* the King's Ransom plaintiffs have no apparent basis for claiming jurisdiction in this court under 28 U.S.C. § 1343(3). *See Hagans v. Lavine,* 415 U.S. 528, 534–43, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Therefore the court has no jurisdiction to consider the pendent state-law claims raised by these plaintiffs.

The motion for a preliminary injunction is granted as to plaintiffs Gerrold A. Stratton d/b/a House of Foxes, Kathleen Stratton, Gladys Filippone, and Mary Mundy. These parties shall submit an appropriate order within seven days of this date. The motion is denied as to plaintiffs King's Ransom, Inc., Carol L. Clarke, Liza Jane Fosdick, and Robert G. Lietz.

SO ORDERED.