WIGGINESS INC., Spartacus Spa, Inc., Lea Facilities, Inc., Al Sigelow d/b/a Greenwood Enterprises, New Wave Social Club, Inc., and Primero Construction Corp., Plaintiffs,

v.

Irwin FRUCHTMAN, Individually and as Commissioner of the Department of Buildings of the City of New York, Allen Schwartz, Individually and as Corporation Counsel of the City of New York, Robert McGuire, Individually and as Police Commissioner of the City of New York, and Edward Tricomi, Defendants.

No. 79 Civ. 5675.

United States District Court, S. D. New York.

Dec. 28, 1979.

Kassner & Detsky, P. C., New York City, for plaintiffs; Herbert S. Kassner, New York City, of counsel.

Allen G. Schwartz, Corp. Counsel, New York City, for defendants; John W. Russell, New York City, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

■ In this action, plaintiffs seek to enjoin certain officials of the City of New York from enforcing the city's zoning ordinance regulating adult physical culture establishments. They also ask this Court to declare the ordinance invalid as violating the United States Constitution, title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000a *et seq.,* and the Human Rights Law of the State of New York, N.Y. Exec. Law §§ 290–301. Jurisdiction is based on 28 U.S.C. §§ 1331 & 1343(3) and the doctrine of pendent jurisdiction.[1]

Plaintiffs now move pursuant to Rule 65, Fed.R.Civ.P., for a preliminary injunction enjoining enforcement of the adult physical culture establishment ("APCE") ordinance pending the outcome of this litigation. Defendants, opposing plaintiffs' motion, cross-

---

1. Plaintiffs also claim jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and § 701 of the Civil Rights Act, 42 U.S.C. § 2000e. The Declaratory Judgment Act, however, does not confer subject matter jurisdiction on the district courts but only provides a remedy where jurisdiction exists independently. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–672, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). Moreover, Civil Rights Act § 701 has nothing to do with jurisdiction; it merely defines terms for the purposes of title VII. Although § 706(f)(3) of the Act, 42 U.S.C. § 2000e–5(f)(3), gives the district courts jurisdiction over actions brought under title VII by aggrieved persons alleging employment discrimination, it does not establish district court jurisdiction over suits such as this to declare state statutes invalid under title VII's preemption provision, § 708, 42 U.S.C. § 2000e–7.

Plaintiffs ask the Court to strike down a New York City ordinance, but they have not named the city as a defendant. In *Ellentuck v. Klein,* 570 F.2d 414, 428 (2d Cir. 1978), the court of appeals found itself without subject matter jurisdiction to consider a claim seeking to annul a city enactment because the City of New York was not named as a defendant. The Court recognizes, however, that *Ellentuck* was decided before the Supreme Court in *Monell v. Department of Social Services of the City of N.Y.,* 436 U.S. 658, 690–691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), held that a local government can be sued directly under 42 U.S.C. § 1983 for declaratory relief where action under a municipal ordinance is alleged to be unconstitutional. It would have done the *Ellentuck* plaintiffs no good to amend their complaint to name New York City as a defendant because under pre-*Monell* law a local government could not be sued directly under § 1983. However, because *Monell* authorizes § 1983 actions against substate government entities for declaratory relief, plaintiffs need only amend their complaint and name the city as a defendant to cure this technical pleading deficiency. To enable plaintiffs to pursue their one constitutional claim that has withstood defendants' motion to dismiss, plaintiffs will be given leave to amend their complaint to add the city as a named defendant.

Pendent jurisdiction provides the basis for the Court's jurisdiction over plaintiffs' title VII and state-law claims. Regarding the availability in this case of federal-question jurisdiction under 28 U.S.C. § 1331, *see* note 15 *infra.*

684

move under Rule 12(b)(6), Fed.R.Civ.P., to dismiss plaintiffs' action for failure to state a claim upon which relief can be granted. For the reasons hereinafter stated, plaintiffs' motion is denied and defendants' cross-motion is granted in part and denied in part.

Wigginess Inc. ("Wigginess"), and Spartacus Spa, Inc. ("Spartacus"), two New York corporations, operate "leisure spas" on East Thirty-sixth and East Fifty-fifth Streets, respectively, in New York City's Borough of Manhattan. These two spas are staffed by "hostesses" and "attendants," nearly all of whom are female, and cater solely to a male clientele. The Wigginess and Spartacus spas offer sauna and bath facilities.

Lea Facilities, Inc. ("Lea"), a not-for-profit corporation organized under New York law, operates a "health club" on East Twenty-second Street in Manhattan. Catering primarily to males, Lea employs women exclusively as the hostesses and bath attendants in its health club. The only male employees at the Lea club are management personnel. This plaintiff's club has a gym, a swimming pool, sauna facilities, locker rooms and showers. Al Sigelow, the president of Lea, also operates a "leisure spa" on Manhattan's West Forty-sixth Street. This spa is equipped with showers and baths and, like Lea, employs only women as hostesses and bath attendants.

New Wave Social Club, Inc. ("New Wave"), like Lea a not-for-profit corporation organized under New York law, is a "swingers club" located on West Fifty-fifth Street in Manhattan. New Wave claims to have only two employees, a receptionist and a locker room attendant, and describes itself as a private club where "members exercise a minimum of sexual self-restraint in pursuit of a common desire to enjoy themselves and each others [sic] company without repressions or inhibitions."[2]

Primero Construction Corporation ("Primero") is a New York corporation which holds a lease on premises at West Forty-fourth Street in Manhattan. The city buildings department has refused to issue Primero a building permit to construct what Primero claims will be residential apartments on the third, fourth and fifth floors of the premises. The buildings department claims that there are a number of reasons why this permit was denied but admits that one reason is the expectation on city officials' part that the premises would not be used for residential apartments but for an APCE. Apparently the first two floors of the building currently house a swingers club known as Xtazy, which the city believes is run by Fred Fredericks, the president of Primero.[3]

New Wave has been issued two orders by the buildings department alleging violations of the APCE ordinance. The other five plaintiffs, with the above-noted exception of Primero, have as yet received no notification from city officials that the city considers them in violation of the ordinance.

The named defendants are the New York City officials charged with enforcing the APCE zoning ordinance. Defendant Edward Tricomi is a city buildings inspector assigned to the buildings department's midtown Manhattan enforcement unit.

On November 16, 1978, the New York City Board of Estimate enacted into law the City Planning Commission's proposal to amend the city's Zoning Resolution to prohibit future APCEs in the entire City of New York and to require the amortization of all existing APCEs within one year. Section 12–10 of the amended Zoning Resolution defines APCE as follows:

An "adult physical culture establishment" is any establishment, club or business by whatever name designated which offers or advertises or is equipped or arranged so as to provide as part of its services massages, body rubs, alcohol rubs, baths

---

2. Affidavit of Edward Sommerfeld, p. 2 (October 15, 1979).

3. *See* affidavits of John W. Russell, ¶¶ 42–44 (November 9, 1979), and Fred Fredericks (October 16, 1979). The city has not said whether it believes Xtazy to be an APCE.

or other similar treatment by members of the opposite sex. The following uses shall not be included within the definition of an adult physical culture establishment:

(1) establishments which routinely provide such services by a licensed physician, a licensed chiropractor, a licensed osteopath, a licensed practical nurse or a registered professional nurse;

(2) electrolysis treatment by a licensed operator of electrolysis equipment;

(3) continuing instruction in martial or performing arts or in organized athletic activities;

(4) hospitals, nursing homes, medical clinics or medical offices; and

(5) barbershops or beauty parlors which offer massage to the scalp, the face, the neck or shoulders only.

Section 52–76 of the Resolution requires that:

In all districts [i. e., the entire city] any adult physical culture establishment, unless subject to an earlier termination requirement contained in this Resolution, shall terminate not later than one year after the effective date of this provision and thereafter the space formerly occupied by such use shall be used only for a conforming use.

Plaintiffs claim the APCE definition is vague and overbroad. They contend that in prohibiting APCEs the zoning ordinance effectively "proscribes crossexual [sic] touching in the entire City of New York" and thus violates constitutionally protected rights of privacy and association. Plaintiffs also argue that the ordinance violates the due process clause by interfering with the allegedly fundamental right of plaintiffs and their employees to work in the common occupations of the community. Maintaining that the requirement that no establishment offer massages or similar treatment to members of the opposite sex would force them to hire and discharge employees on the basis of sex, plaintiffs Wigginess, Spartacus, Lea and Sigelow claim the ordinance violates the equal protection clause and stands in contravention of federal statutory provisions prohibiting sex-based employment discrimination. The Court finds that each of the above contentions is without merit.

In addition, plaintiffs argue that the one-year amortization period prescribed by the ordinance for termination of all nonconforming APCE uses is so unreasonably short that it constitutes a taking of private property without just compensation in violation of the fifth amendment. Although the Court entertains serious doubt that plaintiffs will be able to succeed on the merits of this argument, the question whether it is reasonable to allow a maximum of only one year to APCEs to continue their nonconforming use involves issues of fact and should not be decided on a motion to dismiss. Provided plaintiffs Wigginess, Spartacus, Lea, Sigelow and New Wave establish the standing to challenge the amortization period,[4] the Court will determine after appropriate fact-finding proceedings whether the amortization period can be constitutionally applied.[5]

---

4. For the reasons noted *infra*, Primero's claims are dismissed in their entirety.

5. The use of the police power to terminate *nonconforming* uses has long been recognized as constitutionally permissible. *Hadacheck v. Sebastian*, 239 U.S. 395, 36 S.Ct. 143, 60 L.Ed. 348 (1915). "In ascertaining the reasonable period during which an owner of property must be allowed to continue a nonconforming use, a balance must be found between the social harm [of a continued use] and private injury." *Harbison v. City of Buffalo*, 4 N.Y.2d 553, 562, 176 N.Y.S.2d 598, 602–03, 152 N.E.2d 42, 46–47 (1958). *See also Modjeska Sign Studios, Inc. v. Berle*, 43 N.Y.2d 468, 479, 402 N.Y.S.2d 359,

366, 373 N.E.2d 255, 261 (1977), *dismissed for want of substantial federal question*, 439 U.S. 809, 99 S.Ct. 66, 58 L.Ed.2d 101 (1978). The Court is not unmindful that the New York courts have on two occasions upheld the one-year amortization period for APCEs. *Commissioner of Dep't of Buildings of City of N.Y. v. Bocchino*, N.Y.L.J., June 29, 1977, at 12, col. 1 (Sup.Ct.N.Y.Co.), *aff'd mem.*, 59 A.D.2d 1069, 399 N.Y.S.2d 829 (1st Dep't 1977); *Commissioner of Dep't of Buildings of City of N.Y. v. Carpenter*, N.Y.L.J., June 30, 1977, at 12, col. 5 (Sup.Ct.N.Y.Co.1977), *aff'd mem.*, 61 A.D.2d 898, 402 N.Y.S.2d 701 (1st Dep't 1978). Both *Bocchino* and *Carpenter*, however, involved the issuance of preliminary injunctions, and none

## I

■ Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies.

Federal courts have no power per se to declare statutes unconstitutional. . . The constitutional requirement of a justiciable controversy is met only where [a] plaintiff has sustained, or is in immediate danger of sustaining, some direct injury, as a result of which there arises an honest and active antagonistic assertion of rights. . . . There must be a genuine threat of enforcement of a disputed state . . . statute before a case or controversy involving that statute may be said to exist.

*St. Martin's Press, Inc. v. Carey*, 605 F.2d 41, 44 (2d Cir. 1979) (citations omitted). Only plaintiffs New Wave and Primero have alleged that the city has taken some enforcement action against them. New Wave has been issued two violation orders, and Primero has been denied a building permit because, *inter alia*, the city suspects Primero's proposed building renovation is for the purpose of establishing an APCE. The other plaintiffs' only "injury in fact," *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), is the fear that they will be closed after summary proceedings in the courts of New York State. They have been issued no notice of violations and have received no threats of prosecution from city officials.

Defendants have moved to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted. In reviewing the sufficiency of a complaint in the context of such a motion, the Court must "treat all of the well-pleaded allegations of the complaint as true," *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977),

and give plaintiffs the benefit of any facts that could possibly be proved to support their claims. *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (2d Cir. 1977). Viewing the face of the complaint and resolving all doubts in plaintiffs' favor, the Court finds that the establishments run by plaintiffs Wigginess, Spartacus, Lea and Sigelow fall within the definition of APCE and are thus subject to prosecution for zoning violations under the ordinance. The city gives no indication that it does not intend to enforce the APCE prohibition vigorously. It is at least arguable, therefore, that each of the plaintiffs here has alleged "such a personal stake in the outcome" of this action to warrant the invocation of federal court jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).[6]

## II

The Court need not determine at this juncture whether plaintiffs have conclusively established standing to challenge the APCE zoning ordinance. Even assuming plaintiffs have standing to litigate this challenge, all of plaintiffs' claims, with the exception of the contention that the APCE amortization period violates the taking clause of the fifth amendment, must be dismissed on the merits. Moreover, as none of the claims raised by Primero can withstand defendants' motion to dismiss, Primero's action is dismissed in its entirety.

## A

■ Primero does not now operate an APCE and thus is not affected by the one-year amortization requirement for nonconforming uses. The city buildings department's denial of Primero's permit is subject to administrative review and, if necessary,

---

of the plaintiffs here was a party in those cases. Accordingly, the Court is not prepared at this stage to give any collateral estoppel effect to those decisions. However, defendants are free to plead the defense of collateral estoppel in their answer and pursuant to 28 U.S.C. § 1738 to argue this defense in further proceedings.

**6.** Plaintiffs also satisfy the requirement that their interests lie "within the zone of interests to be . . . regulated by the statute . . . in question." *Association of Data Processing Service Organizations, Inc. v. Camp, supra,* 397 U.S. at 153, 90 S.Ct. at 830.

judicial scrutiny under article 78 of the N.Y. CPLR. This Court can only assume the administrative agencies of the City of New York and the courts of New York State will apply the zoning ordinance in accordance with the United States Constitution. The ordinance is not unconstitutional on its face and, this Court believes, can be construed by the state courts to eliminate any constitutional issue. District court "abstention is appropriate where an unconstrued state statute is susceptible of a construction by the state judiciary 'which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem.'" *Bellotti v. Baird*, 428 U.S. 132, 146–147, 96 S.Ct. 2857, 2866, 49 L.Ed.2d 844 (1976). *See also St. Martin's Press, Inc. v. Carey, supra*, 605 F.2d at 44 n. 2. It is not this Court's role to review zoning decisions made by local administrative officials.

### B

This litigation is not the first instance in which constitutional claims have been made against ordinances and statutes prohibiting massages and similar treatment administered to persons of the opposite sex. Statutory proscriptions outlawing opposite-sex massages have been enacted by both state and local governments and, with no significant exception, have all withstood constitutional attack. On four recent occasions lower court rulings upholding such laws have been appealed to the Supreme Court and on each of these occasions the Court has dismissed the appeals because the cases failed to raise a substantial federal question. *City of Indianapolis v. Wright*, 371 N.E.2d 1298 (Ind.), *appeal dismissed for want of substantial federal question*, 439 U.S. 804, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978); *Smith v. Keator*, 285 N.C. 530, 206 S.E.2d 203, *appeal dismissed for want of substantial federal question*, 419 U.S. 1043, 95 S.Ct. 613, 42 L.Ed.2d 636 (1974); *Rubenstein v. Township of Cherry Hill* (N.J.Sup.Ct., unreported, Jan. 29, 1974), *appeal dismissed for want of substantial federal question*, 417 U.S. 963, 94 S.Ct. 3165, 41 L.Ed.2d 1136

(1974); *Kisley v. City of Falls Church*, 212 Va. 693, 187 S.E.2d 168, *appeal dismissed for want of substantial federal question*, 409 U.S. 907, 93 S.Ct. 237, 34 L.Ed.2d 169 (1972).

■ The Supreme Court in *Hicks v. Miranda*, 422 U.S. 332, 344, 95 S.Ct. 2281, 45 L.Ed. 223 (1975), explained that its dismissal of an appeal for want of a substantial federal question is an adjudication on the merits. It is for the lower courts to ascertain "the reach and content of [these] summary actions," *id.* at 345 n. 14, 95 S.Ct. at 2290 n. 14, keeping in mind that summary affirmances and dismissals by the Supreme Court "must in each case be analyzed carefully in order to discover what issues were actually before the Court." *Mercado v. Rockefeller*, 502 F.2d 666, 673 (2d Cir. 1974), *cert. denied*, 420 U.S. 925, 95 S.Ct. 1120, 43 L.Ed.2d 394 (1975). Although such summary actions "reject the specific challenges presented in the statement of jurisdiction and . . . . prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided" below, they do not adopt the reasoning of the decision from which appeal to the Supreme Court is taken. *Mandel v. Bradley*, 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977) (per curiam).

*City of Indianapolis v. Wright, supra*, is the most recent case challenging the constitutionality of an ordinance prohibiting opposite-sex massages to be dismissed by the Supreme Court for want of a substantial federal question. The Indiana Supreme Court in *Wright* had rejected the contention that an Indianapolis ordinance prohibiting, *inter alia*, the administering of any massage to a person of the opposite sex violated the due process and equal protection clauses of the fourteenth amendment. The *Wright* court considered the earlier Supreme Court dismissals in *Smith v. Keator, supra, Rubenstein v. Township of Cherry Hill, supra*, and *Kisley v. City of Falls Church, supra*, dispositive of all *Wright* plaintiffs' claims that the similar Indianapolis ordinance prohibit-

ing opposite-sex massages was unconstitutional.[7]

The North Carolina court in *Smith v. Keator* saw no unconstitutional sex discrimination in Fayetteville's ordinance making it unlawful for any massagist to treat a person of the opposite sex. When asked on appeal to review that determination, the Supreme Court agreed, implicitly ruling in its dismissal for want of a substantial federal question that the ordinance did not unconstitutionally discriminate on the basis of sex in violation of the equal protection clause.[8]

The appeals from the New Jersey decision in *Rubenstein v. Township of Cherry Hill, supra,* and from the Virginia ruling in *Kisley v. City of Falls Church, supra,* had also presented the Court with equal-protection questions regarding the constitutionality of proscriptions against opposite-sex massages. As noted above, the Supreme Court saw no substantial federal question raised by either the *Rubenstein* or the *Kisley* appeal. The appeal in *Rubenstein* raised the statutory question whether the Cherry Hill ordinance was "repugnant" to the Civil Rights Act of 1964,[9] and the *Kisley* appeal presented the question whether the Falls Church ordinance, by effectively putting massage establishments out of business, constituted an unconstitutional deprivation of property without due process of law.[10]

Other courts have followed these summary decisions and rejected constitutional challenges to similar ordinances prohibiting opposite-sex massages. *See Tomlinson v. Mayor of Savannah,* 543 F.2d 570 (5th Cir. 1976); *Hogge v. Johnson,* 526 F.2d 833 (4th Cir. 1975), *cert. denied,* 428 U.S. 913, 96 S.Ct. 3228, 49 L.Ed.2d 1221 (1976); *Colorado Springs Amusements, Ltd. v. Rizzo,* 524 F.2d 571 (3d Cir. 1975), *cert. denied,* 428 U.S. 913, 96 S.Ct. 3228, 49 L.Ed.2d 1222 (1976); *Stratton v. Drumm,* 445 F.Supp. 1305 (D.Conn.1978). *Cf. Pollard v. Cockrell,* 578 F.2d 1002, 1010–1011 (5th Cir. 1978) (city ordinance regulated but did not prohibit opposite-sex massages). For example, the Fifth Circuit in *Tomlinson* found that the Supreme Court's summary rulings foreclosed any challenge to a Savannah ordinance prohibiting opposite-sex massages. The plaintiffs in *Tomlinson* had challenged the Savannah ordinance

> as an abuse of the police power, as an arbitrary restriction of a supposedly due process-protected right to operate a legitimate business, and as a violation of equal protection in that it (1) "irrationally" distinguishes between heterosexual massages and rub-downs where the customer and massagist are of the same sex, and (2) unnecessarily burdens their constitutionally "fundamental" right to engage in a legitimate business.

543 F.2d at 571. The *Tomlinson* plaintiffs also argued that they had

> standing to assert their employees' and customers' alleged rights of privacy impaired by the ordinance, and their employees' potential equal protection claim that the ordinance establishes a gender-dependent classification that cannot withstand the intensive, albeit not "strict," scrutiny to which sex-specific statutes are subjected.

*Id.* Passing on a similar ordinance, the Fourth Circuit in *Hogge v. Johnson* found that the Court's dismissal in *Kisley v. City of Falls Church, supra,* precluded any claim

---

7. The Supreme Court was also presented by the appeal in *Wright* with the question whether an ordinance outlawing opposite-sex massages creates an unconstitutional irrebuttable presumption that such massages lead to illicit sexual relations. *See* Statement of Jurisdiction, *summarized in* 47 U.S.L.W. (BNA) 3157 (1978). By dismissing the appeal for want of a substantial federal question the Court ruled there was no such constitutional infirmity.

8. Statement of Jurisdiction, *summarized in* 42 U.S.L.W. (BNA) 3270 (1974).

9. Statement of Jurisdiction, *summarized in* 42 U.S.L.W. (BNA) 3637 (1974). The precedential effect of the *Rubenstein* dismissal on plaintiffs' federal statutory sex-discrimination claims is discussed at greater length below. *See* note 16 *infra.*

10. Statement of Jurisdiction, *summarized in* 41 U.S.L.W. (BNA) 3123 (1972).

that the ordinance violated the fourteenth amendment's equal protection clause. *Hogge v. Johnson, supra,* 526 F.2d at 835. And in *Colorado Springs Amusements,* the Third Circuit, like the Fifth Circuit in *Tomlinson,* saw no room for argument that a Philadelphia ordinance prohibiting opposite-sex massages unconstitutionally discriminated on the basis of sex and unreasonably abridged the right to pursue a lawful occupation. *Colorado Springs Amusements, Ltd. v. Rizzo, supra,* 524 F.2d at 576.

■ The binding precedents established by the Supreme Court's summary actions upholding ordinances prohibiting opposite-sex massages require this Court to dismiss plaintiffs' claims that the New York City ordinance violates the due process clause by interfering with the right to work and contravenes the equal protection clause by requiring employers to discriminate on the basis of sex.[11] However, the Supreme Court has yet to be presented directly with a challenge to the constitutionality of an ordinance such as this where, as here, the parties claim violations of rights of privacy and association. It could be argued that in upholding ordinances prohibiting opposite-sex massages in the face of broadside attacks on their constitutionality the Court necessarily decided such ordinances present no constitutional problems whatsoever. This Court, however, believes that to accept that argument would be to give far too expansive an effect to summary dispositions. Summary actions taken by the Supreme Court should be given the narrowest possible interpretation consistent with the Supreme Court's disposition of the case in the context of the issues raised on appeal.

### C

Turning, then, to plaintiffs' privacy and association claims, the Court notes first, without so deciding, that as owners and operators of establishments allegedly prohibited by the city ordinance plaintiffs may well have standing to assert that the ordinance violates privacy and associational rights of their customers and club members. *Craig v. Boren,* 429 U.S. 190, 194–197, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). Even assuming standing, however, plaintiffs' privacy and association arguments raise no claims upon which relief can be granted.

■ The Supreme Court has never recognized a right of privacy for activities such as those carried on in plaintiffs' leisure spas, swingers clubs and health clubs. In *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 65, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), the Court expressly refused to extend the privacy rights it had recognized in *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (marital procreation decisions), and *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) (possession of allegedly obscene material in one's own home), to commercial enterprises. The Court's reasoning in *Paris Adult Theatre I* applies equally to Wigginess, Spartacus and Sigelow's leisure spas, to Lea's health club and to New Wave's swingers club. The services of each of these establishments are open by individual purchase or by membership to the general public.

■ It is also clear that freedom of association does not apply to the activities in question here. That constitutional guaran-

---

11. Even in the absence of the precedents established by the Supreme Court's summary actions, this Court would find no reason to permit plaintiffs to pursue these constitutional claims on the merits. The New York ordinance creates no invidiously discriminatory sex-based classification. Nor would the Court be prepared to recognize any constitutionally guaranteed fundamental right to work in the common occupations of the community. Any such fundamental right that may have been recognized earlier "was derived solely from substantive due process cases which have been either discredited or overruled." *Pollard v. Cockrell, su-*

*pra,* 578 F.2d at 1012. State statutes regulating business activity need only be rationally related to a legitimate state objective. This ordinance creates no suspect classification and affects no fundamental right, and thus need not withstand strict scrutiny. *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 488, 75 S.Ct. 461, 99 L.Ed. 563 (1955). It would not have been irrational for the New York City Board of Estimate to conclude that opposite-sex massages lead to immoral conduct or that such massages themselves offend the public morality. This Court will not substitute its judgment for that of the city's legislative body.

tee has been judicially derived by implication from the express guarantees of the first amendment and is therefore limited to activities involving speech, press, petition and assembly. *See, e. g., Buckley v. Valeo*, 424 U.S. 1, 15, 96 S.Ct. 612, 46 L.Ed. 659 (1976), *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), and L. Tribe, *American Constitutional Law* § 12–23 (1978).

## III

■ In contrast to the many ordinances prohibiting opposite-sex massages enacted elsewhere, the New York City ordinance uses zoning to prohibit the operation of establishments offering or equipped to offer opposite-sex massages rather than directly proscribing such massages. Although plaintiffs contend that this distinguishes the instant case, the Court finds this to be a distinction without a difference. Land-use regulation to protect the health, safety, morals or welfare of a community is a constitutionally valid use of a state's police power. *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). It makes no constitutionally significant difference that New York City has chosen to prohibit opposite-sex massages through land-use regulation instead of some other regulatory means. The city's regulatory scheme need only bear some rational relation to the city's legitimate interest in regulating massage establishments.

■ Subject to the specified exceptions noted above, the zoning ordinance prohibits the operation of any establishment "equipped or arranged so as to provide as part of its services massages, body rubs, alcohol rubs, baths or other similar treatment by members of the opposite sex."

The definition of APCE, plaintiffs argue, is so broad that it renders the ordinance unconstitutional. To illustrate their contention, plaintiffs maintain that the breadth of the APCE definition enables the city to block even the construction of residential apartments (as allegedly done in Primero's case) because apartments can conceivably house APCEs.[12] The Court recognizes that without a limiting construction the ordinance could possibly be read to apply to establishments in which there would be none of the opposite-sex massaging the city seeks to prohibit. Arguably this would subject the ordinance to constitutional attack as irrational. But that situation is not before this Court. The Wigginess, Spartacus, Sigelow and Lea operations admit that they provide opposite-sex massages, and New Wave by design offers facilities for possible massaging by club members of the opposite sex. The ordinance can constitutionally regulate the activities of the plaintiffs in this case.[13] Plaintiffs here have no standing to claim the ordinance unconstitutionally governs the conduct of others.[14]

## IV

■ Plaintiffs Wigginess, Spartacus, Lea and Sigelow claim the APCE zoning ordinance will require them to discriminate in employment on the basis of sex. Because nearly all of their patrons are male, they argue, they will be forced to discharge female massagists and thereby subject themselves to liability under title VII of the Civil Rights Act of 1964 ("the Act"), as amended, 42 U.S.C. §§ 2000a *et seq.* This inconsistency between the local enactment and federal statutory law, these plaintiffs contend, requires the Court to declare the

**12.** As noted earlier, the Court has determined under the abstention doctrine not to consider Primero's claims.

**13.** It is of course possible that the city will not move against New Wave if in fact New Wave does not offer massages. The Court here merely has assumed *arguendo* that New Wave has standing to raise its constitutional claims and only decides that if New Wave's activities are of the nature described in the ordinance the

ordinance can be constitutionally applied to New Wave's establishment.

**14.** *Cf. Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). The overbreadth doctrine applies only to the government's regulation of speech. Whatever else plaintiffs may claim this ordinance regulates, it surely has no effect on freedom of speech.

city ordinance invalid under the supremacy clause.[15] The Court cannot agree.

Section 703(a) of the Act, 42 U.S.C. § 2000e–2(a), makes it unlawful for an employer

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

Apparently it is plaintiffs' argument that the facially neutral city ordinance banning opposite-sex massages in fact conflicts with

section 703(a) because its effect will be to discriminate against female massagists.[16]

Plaintiffs argue that because their clientele is almost exclusively male the ordinance will force them to "refuse to hire [and] to discharge" female massagists, in violation of section 703(a)(1). The ordinance, however, requires plaintiffs neither to discharge nor to refuse to hire anyone. It only makes it unlawful to operate certain establishments. The result of plaintiffs' ceasing an unlawful operation may be to curtail employment opportunities for female massagists, but this surely does not preclude the city's exercising its police power to prohibit practices it finds harmful to the public's health, safety, welfare or morals. *Aldred v. Duling*, 538 F.2d 637, 638 (4th Cir. 1976) (per curiam).

Although Wigginess, Spartacus, Sigelow and Lea do not specifically contend that the city ordinance conflicts with section

**15.** The Court questions whether subject matter jurisdiction under 28 U.S.C. § 1331 is available for plaintiffs' preemption claim, even assuming Wigginess, Spartacus, Lea and Sigelow could remedy the complaint's current defect and each allege a sufficient amount in controversy. However, even though plaintiffs' claim for declaratory relief may not "arise under" the provisions of title VII for the purpose of § 1331 jurisdiction, because 28 U.S.C. § 1343(3) confers jurisdiction on the Court to consider plaintiffs' constitutional claims, the Court can "hear as a matter of pendent jurisdiction the claim of conflict between federal and state [i. e., city] law." *Hagans v. Lavine*, 415 U.S. 528, 536, 94 S.Ct. 1372, 1378, 39·L.Ed.2d 577 (1974). Wigginess, Spartacus and Sigelow have standing to assert their preemption claim. It would appear that Lea, however, does not, for if, as Lea alleges, it is a not-for-profit corporation, it would not be subject to the requirements of title VII. *See* § 701(b), 42 U.S.C. § 2000e(b). Wigginess, Spartacus and Sigelow, it should be noted, allege that they regularly employ in excess of fifteen employees.

**16.** In *Rubenstein v. Township of Cherry Hill, supra*, the Supreme Court was presented on appeal with the question whether an ordinance prohibiting *opposite-sex* massages was "repugnant to [the] 1964 Civil Rights Act and thus violative of [the] Supremacy Clause." Statement of Jurisdiction, *summarized in* 42 U.S. L.W. (BNA) 3637 (1974). The Court's dismissal for want of a substantial federal question—to be given effect as a decision on the merits under *Hicks v. Miranda, supra* ——could be tak-

en as dispositive of plaintiffs' title VII claim here. In *Rubenstein*, however, the plaintiffs apparently were not "employers" as defined in § 701(b) of the Act, *see Stratton v. Drumm, supra*, 445 F.Supp. at 1310, and thus the federal-state conflict in issue in *Rubenstein* could only have arisen out of § 1104 of the Act, 42 U.S.C. § 2000h–4. Section 1104 provides that no "provision of this Act shall be construed as invalidating any provision of State law unless *such provision is inconsistent with any of the purposes* of this Act, or any provision thereof." The Court's dismissal in *Rubenstein* could simply have been predicated on a finding that since the *Rubenstein* plaintiffs were not § 701(b) employers the application of an opposite-sex massage ordinance to their activities did not conflict with any "purpose" of the Act in violation of § 1104. *See Stratton v. Drumm, supra*.

For the purposes of this motion to dismiss the Court has assumed Wigginess, Spartacus, Sigelow and Lea are § 701(b) employers. Consequently, their preemption claim is governed by § 708, 42 U.S.C. § 2000e–7, rather than by § 1104. Section 708 provides:

Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter.

703(a)(2) of the Act, any argument they might make under this section would have to be similar to their contentions under section 703(a)(1) and, in this Court's opinion, would warrant the same response. The court in *Stratton v. Drumm, supra*, 445 F.Supp. at 1312, addressing an East Hartford, Connecticut, ordinance prohibiting opposite-sex massages, saw this differently. Operators of East Hartford massage establishments would have "to limit, segregate, or classify [their] employees or applicants for employment" to ensure no massagist treated someone of the opposite sex, the *Stratton* court reasoned, and as a result prevent male and female massagists from competing for the same work opportunities. The court in *Stratton* concluded that this would amount to a violation of section 703(a)(2). *Accord, Ciancolo v. Members of City Council of Knoxville*, 376 F.Supp. 719, 722 (E.D.Tenn.1974). This Court respectfully disagrees. Ordinances prohibiting opposite-sex massages make it unlawful to provide such treatment and thus eliminate altogether the employment opportunity of massaging persons of the opposite sex. Section 703(a)(2) "cannot be read to foreclose the enactment of ordinances which have the effect of making unlawful conduct which may not have been unlawful when Title VII was enacted." *Aldred v. Duling, supra*, 538 F.2d at 638.

■ This is not a situation where employment standards such as height and weight requirements, though facially neutral, have the effect of bringing about a discriminatory pattern of hiring and firing because of physiological differences between men and women. *Cf. Dothard v. Rawlinson*, 433 U.S. 321, 329, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977). Nor can plaintiffs

argue, as they attempt to do, that female massagists are discriminated against because their male clientele prefer to receive treatment from women. Employers may not discriminate on the basis of their customers' preferences. *Diaz v. Pan American World Airways, Inc.*, 442 F.2d 385, 389 (5th Cir.), *cert. denied*, 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971). *See* 29 C.F.R. § 1604.2(a)(1)(iii) (1979).[17]

## V

Plaintiffs have not demonstrated that preliminary injunctive relief is appropriate in this instance. Not having established that they will suffer irreparable injury from denial of provisional injunctive relief, plaintiffs cannot satisfy either of the Second Circuit's two alternative tests.

> Preliminary injunctive relief in this Circuit calls for a showing of "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."

*Jack Kahn Music Co. v. Baldwin Piano & Organ Co.*, 604 F.2d 755, 758 (2d Cir. 1979).

■ It is asserted by plaintiffs that their businesses will be closed by injunction proceedings instituted by defendants in the courts of New York State unless defendants are enjoined from proceeding to enforce the APCE ordinance. If they are closed in this manner, plaintiffs claim, they will be driven into insolvency and their operations will be fatally and irreparably injured. Plaintiffs, however, have presented nothing to this Court to support these contentions. Unsubstantiated allegations of injury cannot pro-

17. Defendants argue that even if the ordinance violates § 703(a) the requirement that massagists treat only persons of the same sex constitutes a bona fide occupational qualification ("BFOQ") under § 703(e)(1), 42 U.S.C. § 2000e–2(e)(1). Although it is recognized that "§ 703(e) provides only the narrowest of exceptions to the general rule requiring equality of employment opportunities," *Dothard v. Rawlinson, supra*, 433 U.S. at 333, 97 S.Ct. at 2729, it is conceivable that the BFOQ defense would

be available to Wigginess, Spartacus, Sigelow and Lea in an action under § 703(a). New York State, for example, recognizes that sex may be a BFOQ under its statutory counterpart to title VII, N.Y.Exec. Law §§ 290–301, in instances "[w]here sex is a bona fide factor in terms of community standards of morality, e. g., a man to work as an attendant in a men's washroom; a woman to work as a fitter in a girdle and brassiere establishment." 3 Empl. Prac. Guide (CCH) ¶ 26,052(B)(2) (1977).

vide the basis for establishing the irreparable harm required for an injunction to issue.

■ The Court, moreover, does not believe plaintiffs are likely to succeed on the merits of their one claim now remaining for trial. It is unlikely that, given the nature of APCE operations and the city's strong interest in regulating these establishments, plaintiffs will be able to demonstrate that the one-year amortization period is unreasonable, especially since the prohibition of APCEs does not amount to a deprivation of all reasonable uses of plaintiffs' property.

## VI

■ The Court has not considered plaintiffs' claims under the New York Human Rights Law, N.Y.Exec.L. § 290–301, and does not have before it any claims plaintiffs might make under the New York State Constitution. Having dismissed all but one of plaintiffs' federal claims, the Court, in exercising its discretion under *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), believes it best to leave plaintiffs' state claims to the New York courts to adjudicate.

Accordingly, plaintiffs' application for a preliminary injunction is denied, and defendants' cross-motion to dismiss is granted with respect to all of plaintiffs' claims except those of Wigginess, Spartacus, Sigelow, Lea and New Wave alleging the one-year amortization period for APCEs is an unconstitutional taking of property without compensation. These five plaintiffs and the city defendants are to prepare to proceed to trial on this issue. All of Primero's claims are dismissed.