**Paul MILSTEIN, individually and as a partner of Mart Associates, and Mart Associates, Plaintiffs,**

v.

**The CITY OF NEW YORK, Edward I. Koch, as Mayor of the City of New York, Charles M. Smith, as Commissioner of Buildings of the City of New York, Herbert Sturz, as Chairman of the New York City Planning Commission, Steven Spinola, as President of the New York City Public Development Corporation, and Paul A. Crotty, as Commissioner of Finance of the City of New York, Defendants.**

**No. 85 Civ. 4121 (RLC).**

United States District Court, S.D. New York.

Jan. 31, 1985.

Scoppetta & Seiff, New York City (Nicholas Scoppetta and Carolyn H. Henneman, of counsel), for plaintiffs.

Frederick A.O. Schwarz, Jr., Corp. Counsel of City of New York, New York City (Gabriel Taussig, Virginia Waters and Lawrence P. Kolker, of counsel), for defendants.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiffs' voluminous amended complaint alleges that "defendants' concerted actions, under color of state law," seek to deprive them of property and due process rights by "refusing to issue permits to which plaintiffs are entitled as a matter of state law and precluding plaintiffs from obtaining future and further permits to which they are or will become entitled under state law, undermining and depriving plaintiffs of their right and opportunity to obtain federally insured F.H.A. mortgages, and attempting to deprive plaintiffs of generally available public financing." (Par. 1, amended complaint). In that paragraph plaintiffs go on to allege that the above actions were "part of a plan and scheme to coerce plaintiffs to desist from and to abandon their lawful exercise of their right of access to judicial processes to vindicate personal and property rights" under the federal and state constitutions and federal, state and local law. *Id.*

In paragraph 2 it is asserted that the claims arise under the First and Fourteenth Amendments and 42 U.S.C. § 1983. Paragraphs 14–44 are entitled *BACKGROUND FACTS.* These paragraphs take us through developments in the 42nd Street Development Project—a joint City-State venture to construct a merchandise mart on 42nd Street and its environs—as plaintiffs view them to March, 1985. To sum-

marize, these allegations give a history of plaintiffs' attempt to be designated developer of the project, and their frustration in the designation of another applicant, George Klein, who allegedly was one of the Mayor's financial supporters.

Paragraphs 45 *et seq.* set out the facts upon which the amended complaint is based. Plaintiffs assert that although they had lost designation as Mart Developer, they had acquired property slated for development and on or about November, 1984, publicly announced their interest in constructing on this site a mixed use, 35 story building with 300,000 square feet of office space and 504 rental apartments, 20% of which would be available to moderate income families. (Par. 45, 46 amended complaint).

Paragraph 47 alleges that in an effort to mitigate losses to the City which would result from political favoritism afforded Klein, "the defendants have embarked on a systematic campaign to destroy the value of plaintiffs' Property."

Paragraph 48 alleges that beginning in September, 1984, plaintiffs began requisite filings with the Department of Buildings of the City for approvals and permits seeking to allow construction on the property, and, contemporaneously, plaintiffs sought to obtain financing through F.H.A. mortgage insurance.

Paragraph 49 alleges that among their permit applications, plaintiffs requested in November, 1984, that the Department of Buildings issue an excavation permit. Paragraph 50 alleges that the application has never been rejected nor approved by the Department of Buildings and that no written objections were made by the Department as of December, 1984. Paragraph 51 alleges that on or about March 12, 1985, defendants learned that plaintiffs had begun to put their construction program into effect and that defendants began to effectuate plans to thwart plaintiffs' construction "efforts and to destroy or minimize the value of the Property and its proper utilization."

Paragraph 52 alleges that Joseph White, Assistant Commissioner of the Department of Buildings, on March 12, 1985, "acting for the City, directed that no approvals or permits be issued to plaintiffs and placed an endorsement on plaintiffs' file prohibiting any approvals of any kind absent prior consultation with White." Reference is made to Exhibit A which is a handwritten notation stating "No Approvals of any kind w/o checking with Asst Comm J White", initialed and dated 3/12/85.

Paragraph 53 alleges that White's order has been complied with and that to date the Department of Buildings has failed and refused to take action on the application for an excavation permit within 40 days as it is required to do by law, citing *Milstein v. O'Neill*, 25 N.Y.2d 757, 303 N.Y.S.2d 512, 250 N.E.2d 573 (1969).

Paragraph 54 alleges that plaintiffs have acquired a vested property right entitling them to the excavation permit and that defendants have knowingly, willfully and maliciously deprived them of that property right.

Paragraph 55 alleges that as a result of refusal to issue the excavation permit and the decision to disapprove all other applications with respect to the property, plaintiffs have been unable to commence construction and each day the property remains unimproved, plaintiffs are deprived of full value of the property, a value set by the United States Department of Housing and Urban Development at $1200 per square foot.

Paragraph 56 alleges that their efforts to secure residential and commercial tenants for the building has been impeded and each month delay costs plaintiffs $2,915,300 or more in lost rentals.

Paragraph 57 alleges that rising market costs in the building industry and a dramatic increase in construction costs will result from this delay and because of a commitment to middle income housing, plaintiff will not be able to recoup these losses through increased rent.

Paragraphs 58–63 allege plaintiffs filed an application with the Federal Housing Administration ("F.H.A.") for F.H.A. mortgage insurance; that in September, 1984, the United States Department of Housing and Urban Development ("HUD") indicated that the mortgage would be forthcoming subject to plaintiffs obtaining the requisite permits; that in furtherance of its plan "the City together with various of the defendants" undertook steps to have HUD and F.H.A. withdraw or terminate that favorable action. (Par. 61). A letter dated April 9, 1985, on behalf of the City, requested HUD to disapprove the application for mortgage insurance. *Id.*

The letter referred to is set out in Exhibit B. That letter is signed by Steven Spinola, President, New York City Public Development Corporation, Herbert Sturz, Chairman, New York City Department of City Planning (both are defendants here) and Vincent Tese, Chairman, New York State Urban Development Corporation. The letter is addressed to Joseph Monticciolo, Regional HUD Administrator and states in part: "[w]e are writing to advise you of our concern that approval of [plaintiffs'] mortgage insurance application would be in direct conflict with the [42nd Street Development] Project, and with the redevelopment policies of the State and City of New York pursuant to which the Project was approved. The site on which the proposed building would be located is entirely within the boundaries of the Project, and will in accordance with the Project plan, be occupied for Project purposes by an approximately 2.47 million square foot merchandise mart."

Plaintiffs allege that pursuant to this letter the defendants prevented plaintiffs from proceeding with their mortgage insurance application and as a result of the delay in obtaining mortgage insurance, plaintiffs will be subject to higher interest rates and less favorable mortgage terms. (Par. 62–63).

Paragraphs 64–65 allege "a plan of threats and coercion against Milstein" by defendants as part of their punitive scheme. It is alleged that the City and defendant Paul A. Crotty have threatened to deny Milstein and his Associates generally available public finances on unrelated ventures in retaliation; that Crotty has opposed the sale of revenue bonds to finance the development of separate property in which Milstein is involved. In a May 20, 1985 letter addressed to an attorney with another developer, Crotty stated that the City should consider "whether that individual or entity has filed unwarranted, disruptive and harassing lawsuits which are expensive, time-consuming and wasteful of scarce City resources" in determining whether to give tax free financing. (Ex. C to the Amended Complaint).

*Determination*

There are precious little specifics in this long litany of complaints against the City. In paragraph 48 of the complaint appears a statement that in September, 1984, plaintiff began filing applications for approval of construction permits and applied to F.H.A. for mortgage insurance; that plaintiffs in November requested an excavation permit and the application was not rejected, approved nor replied to within 40 days. These along with the reference to Assistant Commissioner Joseph White's direction are specific. The reference to the letter to HUD and Crotty's letter is also specific. The remainder of the amended complaint contains nothing but conclusory allegations. Aside from the notation of White, the letter to HUD signed by Sturz and Spinola, the letter from Crotty, and the failure of the Department to issue the excavation permit or file objections to it, one reads the amended complaint without learning very many particulars about the nefarious plans against plaintiffs, or in what respect each of the named defendants was involved in the schemes to bring plaintiffs to ruin. Surely defendants are entitled to be apprised of the specifics of plaintiffs' claims, and to be told what role each allegedly played in the conspiracy against plaintiffs, particularly since defendants are being charged individually and collectively

with misfeasance and violation of the public trust.

The specific allegations referred to above do not provide a basis for subject matter jurisdiction in this court. Assistant Commissioner White's notation not to approve plaintiffs' application without checking with him does not indicate that approval will not be forthcoming. An agency's requirement that certain matters be discussed with certain designated officials before action is taken is commonplace, and such restrictions do not support a leap to the conspiracy thesis that plaintiffs assert. Moreover, the White directive does not provide the basis for a federal constitutional, civil rights or other federal statutory claim.

The letter to HUD requesting that F.H.A. mortgage insurance not be approved for plaintiffs' property because the 42nd Street Development Project had other designs for the property was a required notice to HUD by these public officials who had responsibility for implementing the planned development as approved by the City and State. This letter, even if given the meaning which plaintiffs read into it, is an insufficient basis for establishing a federal claim to be adjudicated in this court. The letter of Commissioner Crotty is an expression of his opinion concerning City policy. It does not mention plaintiffs. The letter is dated May 20, 1985. The complaint in this case is dated May 31, 1985, and the amended complaint appears to have been filed in June, 1985. The Commissioner's letter could not have played any part in any of the deprivations plaintiffs allegedly suffered. Moreover, official action seeking to apply Commissioner Crotty's sentiments to plaintiffs is not even alleged.

Plaintiffs' statement of facts in their memorandum of law is at odds with the allegations in their amended complaint. The amended complaint makes no allegation susceptible to an equal protection claim. The law in this circuit is that a complaint alleging a § 1983 civil rights violation must make specific factual assertions regarding the civil rights deprivation being

claimed. *Koch v. Yunich,* 533 F.2d 80, 85 (2d Cir.1976).

The sole arguable ground for a federal claim is the apparent contention that plaintiffs have a vested right to be issued an excavation permit because their application has been on file with the Department of Buildings for more than 40 days without its being approved or rejected. It is plaintiffs' theory that on the authority of *Milstein v. O'Neill,* N.Y.L.J., March 12, 1969 (Sup.Ct. N.Y.Co.), *aff'd,* 32 A.D.2d 612, 299 N.Y. S.2d 797 (1st Dept.), *aff'd* 25 N.Y.2d 757, 303 N.Y.S.2d 512 (1969), on remand enforcement ordered, *sub nom. O'Neil v. Milstein,* N.Y.L.J. (Sup.Ct.N.Y.Co. January 21, 1970), they have a vested right to an excavation permit.

In the above case Milstein, one of the plaintiffs in this action, had been encouraged by the Director of City Planning to acquire property and erect a structure in the Lincoln Center area. Apparently after Milstein had secured the land and was making plans to build on the acquired site, he and City Planning officials failed to agree on the kind of structure he should erect. City Planners warned Milstein that unless he agreed to have the building designed in accord with the specifications of architects approved by them, he would not be allowed to build anything on the property. Milstein refused to agree to this condition. Having reached an impasse, Milstein decided to go forward on his own and build in accord with the structural specifications he favored. He obtained approval of his application for a variance from the City Board of Standards and Appeals. When apprised of this, the Corporation Counsel requested the Commissioner of Buildings to have the Department of Buildings refuse to issue any permit to Milstein for construction on the property pending review by the Corporation Counsel of the variance granted by the Board of Standards and Appeals. Acting on the Corporation Counsel's request, the Department of Buildings directed that no foundation permit be issued to Milstein. Milstein then instituted an Article 78 proceeding in New York State Supreme Court.

The State Supreme Court ruled initially in Milstein's favor because the City failed to provide a valid reason for denying the permit, and because the delay was endangering adjacent properties as well as adding increased costs for construction on Milstein's site. The Appellate Division unanimously affirmed, and the Court of Appeals ruled that even though plaintiff's application for the permit apparently did not comply with the requirements of the City's Building Code, plaintiff was nonetheless entitled to the permit because the City had not denied his application within 30 days for a valid reason. The Court of Appeals pointedly refused, however, to determine whether the "physical work ('foundation-exterior walls') on the basis of plans filed with the application may or may not be regarded as a proper foundation for other purposes, such as determining the vesting of rights surviving a change in zoning requirement," because that issue was not before the court.

On remand in 1970, Justice Nadel defined the circumstances that give rise to a claim of vested rights:

> The essence of the claim to vested rights is the injustice and hardship suffered by the property owner who, in good faith, relies upon lawfully issued variances and permits to construct and enter into the use of a structure, only to find, after a substantial investment of time and money, that the municipality has changed its mind and, by its subsequent actions, has sought to render his prior substantial investment worthless or of diminished value.

*O'Neill v. Milstein,* N.Y.L.J. (Sup.Ct.N. Y.Co. January 21, 1970).

The circumstances cited in that case seem particularly egregious. As noted it was at the urging of City officials that Milstein invested funds in acquiring the Lincoln Center property. Then because Milstein refused to accept their ultimatum City officials sought to prevent his making any desired improvements on the property. There are no such egregious similarities here. Plaintiffs lost out in competitive bidding on the 42nd Street Development Project. They allege that the City exercised unfair favoritism in awarding the prize they sought to Klein. If the award to Klein is suspect and subject to legal challenge, the challenge must be based on state or local law, rules and regulations. There is no basis for exercise of this court's limited jurisdiction.

Since the circumstances in the instant case are quite different from those in *Milstein v. O'Neill,* the court has serious doubts that the courts of New York would reach the same result—require the City to issue an excavation permit, even though plaintiffs have not alleged compliance with the Building Code and even though granting the permit might interfere with implementation of the City and State objectives in re the 42nd Street Development Project. More to the point for our purposes, federal subject matter jurisdiction is not implicated by the failure or refusal of the City to act on an application for a foundation or excavation permit within the specific period as provided in the City's Administrative Code. If the City has failed to comply with local regulations, and that without more is the only possible actionable issue properly raised in these proceedings, the bona fides of the parties' position concern matters to be settled by the state courts pursuant to the mandate of local and state law. No federal issues are involved.

Indeed, whether plaintiff is entitled to the issuance of a foundation or excavation permit raises questions concerning land use, a matter long held to be of particular local concern best left to the state courts. To paraphrase *Wigginess Inc. v. Fruchtman,* 482 F.Supp. 681, 687 (S.D.N.Y.1979) (Ward, J.), *aff'd,* 628 F.2d 1346 (2d Cir.), *cert. denied,* 449 U.S. 842, 101 S.Ct. 122, 66 L.Ed.2d 50 (1980), review of excavation and foundation permit determinations by the City's Department of Buildings is not an appropriate function for a federal court; *see also The Dells, Inc. v. Mundt,* 400 F.Supp. 1293, 1298 (S.D.N.Y.1975) (Wyatt, J.) (where "the subject is local land use, a subject peculiarly appropriate for state

courts", a federal court should abstain from deciding the issue).

The City has in place a regulatory program governing the issuance of building or foundation permits, and action or inaction of public officials in the enforcement of regulations are subject to review by the state courts. There is an intricate statutory regulatory system for effecting compliance with the Building Code. The Commissioner of Buildings may approve or reject plans and issue permits for the construction of new buildings. To obtain a permit an applicant must meet certain architectural and structural specifications. New York City Admin.Code §§ C26–109.1 and C26–110.1–110.5. The application is examined by building inspectors, and if in compliance with all applicable laws and regulations, it is approved by the Commissioner of Buildings. If rejected, the applicant is notified and may resubmit plans for further review. Admin.Code § C26–118.1. Court review may be obtained through Article 78 proceedings. Whether failure to act on plaintiffs' application within 40 days gives plaintiffs an unconditional right to issuance of the permit turns on an application of local regulations and state law with which state courts have far greater familiarity than the federal courts. Whether *Milstein v. O'Neill, supra,* is the last word on the subject and is to be uncritically applied to the different circumstances present here may best be determined by state courts. Accordingly, we deem it prudent in the exercise of our discretion to abstain from dealing with those questions.

The City has made a comprehensive array of additional arguments in support of its motion to dismiss. While we agree in substance with defendants' contentions that there has been no taking of plaintiffs' property, that plaintiffs cannot assert any right to any public benefits denied to them by acts of any City official, that the constitutional guarantees of the First and Fourteenth Amendments are in no way implicated in this controversy, and that the viable claims that are raised are not amenable to adjudication in a federal forum, the court believes the above discussion provides a

sufficient and appropriate basis for granting the motion to dismiss. Accordingly, those additional contentions of defendants will not be addressed. The motion to dismiss is granted.

IT IS SO ORDERED.